649 P.2d 262

**EL PASO NATURAL GAS COMPANY, a corporation, Plaintiff-Appellee,**

v.

**MOHAVE COUNTY, a body politic, Grace E. Marlow, County Treasurer of Mohave County, Arizona; the Board of Supervisors of Mohave County, and the Members thereof, Mabel Bailey, Ray Wells, and James Sterling, Defendants-Appellants.**

**The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Plaintiff-Appellee,**

v.

**MOHAVE COUNTY, Defendant-Appellant.**

**No. 15656.**

Supreme Court of Arizona, En Banc.

July 14, 1982.

Leek & Lee by Terrence S. Leek and Paul Lenkowsky, Bullhead City, and William J. Ekstrom, Jr., Mohave County Atty., Kingman, for defendants-appellants.

Bilby, Shoenhair, Warnock & Dolph by Stephen A. Thomas, Tucson, for plaintiff-appellee El Paso Natural Gas Co.

Fennemore, Craig, von Ammon & Udall by Donald R. Gilbert and C. Owen Paepke, Phoenix, for plaintiff-appellee The Atchison, Topeka & Santa Fe Ry. Co.

HAYS, Justice.

The appellees, El Paso Natural Gas Company ("El Paso") and The Atchison, Topeka & Santa Fe Railway Company ("Santa Fe") are Mohave County taxpayers. Both parties filed separate actions challenging the legality of the 1978–79 Mohave County budget. Summary judgment was entered in favor of El Paso. The judgment specifically provided that the 1978–79 Mohave County budget was illegal and that El Paso was entitled to judgment in the amount of $39,826.00 with interest. Partial summary judgment was entered in favor of Santa Fe in the amount of $24,459.88 with interest. Mohave County appealed both judgments.

We have consolidated the two cases on appeal because they involve the same issues. We have jurisdiction pursuant to 17A A.R.S. Rules of Civil Appellate Procedure, rule 19(e), and A.R.S. § 12–2101(B).

Mohave and El Paso stipulated to the existence of certain facts at the trial level which we rely on for purposes of this appeal. The Arizona budget laws in existence at the time El Paso and Santa Fe brought suit required the governing board of each county to prepare annually a complete statement of the financial affairs of the county, an estimate of the dollar amounts required to meet county expenses, and a budget for the current fiscal year. In addition, the governing board was to determine and fix the tax rate upon all taxable property located in the county.

After preparing the required statement and estimates, the Board of Supervisors of Mohave County ("Board") adopted a budget in the amount of $19,152,920 for the 1978–79 fiscal year. This budget contained an estimated receipt of revenue from sources other than direct taxation in the amount of $844,080. This amount was entitled "In Lieu Funds." These funds represented the estimated amount of payments to be received pursuant to Public Law 94–565, 31 U.S.C.A. §§ 1601 et seq., from the United States Government for certain federal lands located in the county.

Under the Arizona budget law in existence at the time, the estimated total amount of expenditures proposed for the fiscal year could not exceed by more than ten percent the estimated total amount of expenditures for the previous fiscal year, excluding certain specifically enumerated expenditures. The Board did not include the expenditures to be made from the "In Lieu Funds" in its estimate of the total expenditures for the 1978–79 fiscal year. As a result, the Board determined and fixed the tax rate at $2.3248 [1] per $100 valuation. If, as the trial court stated, the "In Lieu Funds" were legally required to be included in the amounts proposed for expenditure, the funds would be subject to the ten-percent limitation. As a consequence, the county tax rate would have been $1.9094 per $100 valuation.

El Paso paid, under protest but before delinquent, the property taxes due for the first half of the tax year 1978. This payment included county taxes in the amount of $111,224.03. Had the "In Lieu Funds" expenditures been included in the ten-percent limitation, El Paso's Mohave County taxes would have been $39,826 less than the sum levied pursuant to the budget adopted by the Board.

Two questions are presented on appeal:

1. Are expenditures of "In Lieu Funds" received from the federal government pursuant to Public Law 94–565, 31 U.S.C.A. §§ 1601 et seq., included within the ten-percent limitation on expenditures established by Arizona's budget law, A.R.S. §§ 42–302, 303 and 304?

2. Does application of the ten-percent limitation on increases in expenditures conflict with congressional intent regarding the use of "In Lieu Funds" by the counties?

TEN–PERCENT LIMITATION

On August 7, 1978 the Board adopted a budget for Mohave County for the 1978–79 fiscal year. At the time the Board estimated upcoming expenditures and set the budget, its actions were governed by A.R.S. Title 42 on Taxation. The Board estimated the sum of $844,080 as the amount of tax-free money to be received from the United States Government under Public Law 94–565, 31 U.S.C.A. §§ 1601 et seq. This amount of "In Lieu Funds" was apportioned among three categories to be spent as follows:

(A) "In-Lieu of Taxes Fund"

| | | |
|---|---|---|
| Sheriff's automobile | $100,000 | |
| Screening plant | 50,000 | |
| Airplane | 30,000 | |
| Building purchases | 104,879 | $284,879 |

(B) "General Fund"

| | | |
|---|---|---|
| Fire and liability insurance | $440,000 | |
| Annex expenses | 27,000 | |
| Courthouse utilities | 22,758 | $489,758 |

(C) "Road Fund"

| | | |
|---|---|---|
| Engineering | $ 69,443 | $ 69,443 |
| TOTAL | | $844,080 |

---

1. In its statement of facts, Mohave County refers to two different figures: $2.3248 and $2.3258 per $100 valuation.

The Board excluded the entire sum of $844,-080 from the amounts subject to the ten-percent limitation under A.R.S. §§ 42–302(D), 42–303(C) and 42–304(B). These were the portions of the budget law relating to the ten-percent limitation in effect at that time.[2]

Section 42–302 dealt with the preparation and publication of the *estimated* county expenditures for the current fiscal year. Subsection (D)[3] provided:

D. The total of amounts proposed for expenditure in the estimates shall not exceed by more than ten per cent the total of amounts proposed for expenditure in the budget adopted for the previous fiscal year, excluding in each case expenditures for school, bond, special assessment, district levy, primary, general or special election purposes, municipal cemeteries, hospitals of a municipal corporation, the amount of increase in salaries of public officials whose salaries are set or limited by state law, or municipal utility undertaking as defined in § 9–521.

Section 42–303 required the Board to hold a hearing following the publication of the estimated proposed expenditures and subsequently to adopt the estimates of the proposed expenditures. Said expenditures constituted the budget of the county. Section 42–303(C)[4] provided:

C. The total amounts in the budget proposed for expenditure shall not exceed the total of amounts proposed for expenditure in the published estimates, nor shall the total of amounts in the budget proposed for expenditure exceed by more than ten per cent the total of amounts proposed for expenditure in the budget adopted for the previous fiscal year, excluding expenditures for school, bond, special assessment and district levy, primary, general or special election purposes, municipal cemeteries, the amount of increase in salaries of public officials whose salaries are set or limited by state law, or municipal utility undertaking as defined in § 9–521.

Section 42–304 instructed the Board to fix, levy and assess the amount to be raised by direct taxation. This amount, in addition to all other estimated sources of revenue including unencumbered balances from the previous fiscal year, were to "equal the total of amounts proposed to be expended in the budget for the current fiscal year." Subsection 42–304(B)[5] specifically provided:

B. The budget estimate as finally adopted shall not exceed by more than ten per cent the total amount proposed for expenditure in the budget adopted for the previous year, after excluding expenditures for school, bond, special assessment and district levy, primary, general or special election purposes, municipal cemeteries, search and rescue equipment, facilities and supplies, medical clinics as defined by § 36–2351, the amount of increase in salaries of public officials whose salaries are set or limited by state law, and municipal utility undertaking as defined in § 9–521.

2. House Bill 2142 became effective on May 1, 1979. Section 3 of the Bill provided:

Sec. 3. Exclusion of federal funds from budget and tax levy limitations for fiscal year 1979–1980

Notwithstanding any other law to the contrary, for fiscal year 1979–1980 all federal funds on hand or received by a county, city or town shall be excluded from the budget adopted for the previous fiscal year and from the estimated budget and adopted budget for the current fiscal year for the purpose of computing the limitations under §§ 42–302, 42–303 and 42–304 on the amounts proposed for expenditure or to be raised by direct taxation in the estimated budget or the adopted budget of such county, city or town.

3. In 1980 § 42–302(D) was amended to read:

"D. The total of amounts proposed for expenditure in the estimates shall not exceed the expenditure limitation established for such county, city or town."

4. Effective July 1, 1982, § 42–303(C) read:

"C. The total amounts in the budget proposed for expenditure shall not exceed the total of amounts proposed for expenditure in the published estimates."

5. After the 1980 amendment, § 42–304(B) read:

"B. The governing body shall not fix, levy and assess an amount of primary property taxes in excess of the maximum amount permitted to be levied, fixed or assessed by § 42–301.

Thus, § 42–302(D) dealt with estimated *proposed expenditures*, while § 42–303(C) applied to the expenditures included in the *proposed* and subsequently adopted budget. Under these sections the only expenditures which did not need to be included for purposes of computing the ten-percent limitation were those designated for the following purposes: school, bond, special assessment and district levy, elections, municipal cemeteries, salaries of certain public officials, and municipal utilities. Section 42–304(B) applied to the budget estimate as *finally adopted.* This section likewise excluded the above-listed expenditures from the ten-percent budget limitation. Moreover, § 42–304(B) additionally excluded search and rescue equipment, facilities and supplies, and medical clinics from the ten-percent limitation.

The Board did not include in its calculation of the ten-percent limitation expenditures for a sheriff's automobile, a screening plant, an airplane, building purchases, fire and liability insurance expenses, courthouse utilities, and engineering expenses. None of these items appear in any of the categories of expenditures that could be excluded in calculating the ten-percent limitation. The budget portion of the taxation statutes plainly states that during all stages of the budgeting process the expenditures may not exceed by more than ten percent the expenditures in the budget adopted the prior year unless the expenditures fall within an exclusion.

Mohave County nevertheless argues that when construing a statute, a court is required to ascertain the true intent of the legislature at the time it enacted the statute. It cites *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974), in support of this proposition. Mohave County maintains that the legislative objective was "[t]o compel local governments in Arizona to operate on a cash basis by restricting the level of revenue—and by logical extension, the level of expenditure—which could be raised by county taxation in any given year." It additionally asserts that the legislature's concern in enacting the budget law was to prevent indebtedness beyond local taxpayers' capacity to pay. It concludes that none of these objectives is advanced by requiring "In Lieu Funds" from the federal government to be included in the calculation of the ten-percent limitation.

■ Mohave County does not assert that the language of the budget law is ambiguous although it urges the court to consider the legislature's intent and objective in enacting the statutes. We agree that the cardinal rule of statutory interpretation involves ascertaining and deferring to the legislature's intent. *Ernst v. Collins*, 81 Ariz. 178, 181, 302 P.2d 941, 943 (1956); *Garrison v. Luke*, 52 Ariz. 50, 55, 78 P.2d 1120, 1122 (1938). However, when the statutory language is plain and unambiguous, the rules of statutory construction are inapplicable. *See Long v. Dick*, 87 Ariz. 25, 28, 347 P.2d 581, 583 (1959); *State v. Airesearch Manufacturing Co.*, 68 Ariz. 342, 348, 206 P.2d 562, 567 (1949). Mohave County would have this court ignore the plain and unambiguous language of the statute to superimpose Mohave County's interpretation of the legislature's intent in enacting the budget law. We can only interpret the laws in conformity with the language used unless such an interpretation would lead to an impossibility or absurdity. *Marquez v. Rapid Harvest Co.*, 89 Ariz. 62, 64, 358 P.2d 168, 170 (1960); *Mayberry v. Duncan*, 68 Ariz. 281, 284, 205 P.2d 364, 366 (1949). The language of the statutes is clear and unambiguous. "In Lieu Funds" are not exempt from the ten-percent expenditure limitation.

The refusal of this court to create a judicial exemption for "In Lieu Funds" does not work to undermine the legislature's intent, as set forth by Mohave County, to avoid overburdening the taxpayer or overusing debt. In fact, inclusion of "In Lieu Funds" in the ten-percent expenditure limitation would decrease the tax load on individual taxpayers. We are not free to extend the clear meaning of the statute even though the result may be harsh or involve mistaken policy. *Ernst v. Collins, supra; Garrison v. Luke, supra.*

## PREEMPTION

Appellant, Mohave County, contends that subjecting federal "In Lieu Funds" to the ten-percent limitation of Arizona's budget law would defeat the intent of Congress in enacting Public Law 94–565, 31 U.S.C.A. §§ 1601 *et seq.* Mohave County therefore concludes that this "federal regulatory scheme" has preempted application of the Arizona budget law.

■ Federal law can preempt state law in several situations: where an express provision for preemption exists; where Congress has occupied the field by adoption of an all-embracing federal plan of control; where state laws would obviously frustrate congressional purpose. *Maryland v. Louisiana*, 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230–31, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The latter situation, appellant contends, is the case here.

Preemption does become a distinct possibility if state law or policy produces results inconsistent with the objectives of the federal statute. *Hill v. Florida*, 325 U.S. 538, 542, 65 S.Ct. 1373, 1375, 89 L.Ed. 1782 (1945); *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Thus, a review of the purpose and objectives behind Public Law 94–565 is necessary to ascertain the validity of Mohave's preemption claim.

The Senate's intent when it passed Public Law 94–565 was "[t]o provide for certain payments to be made to State or local governments by the Secretary of the Interior based upon the amount of certain public lands within the boundaries of such State or locality...." S.R.Rep.No.94–1262, 94th Cong., 2nd Sess. 1, *reprinted in* [1976] U.S. Code Cong. & Ad.News 5968. The legislative history of the Act includes a section-by-section analysis of Public Law 94–565. This analysis states in part:

"Subsection (a) [of Section 1] directs that, beginning October 1, 1976, ... the Secretary [of the Interior] must make annual payments, on a fiscal year basis, to each unit of local government in which are located the public lands identified in section 4 (called 'entitlement lands'). These payments may be used for any governmental purpose."

U.S.Code Cong. & Ad.News, *supra* at 5978.

Mohave County is considered a "unit of local government" for purposes of this appeal. It contains "entitlement lands" within its borders. Under the applicable statute, Mohave County was to receive $.75 from the federal government for each acre of entitlement land.

A report by the Public Land Review Commission prompted the ultimate passage of Public Law 94–565. The Commission noted a trend or policy of disposal of public (federal) lands by the states. The Commission recommended that the burden of reversing this trend and retaining lands in federal ownership should not be borne solely "by those states and governments in whose areas the lands are located. Therefore, the federal government should make payments to compensate state and local governments for the tax immunity of federal lands." U.S.Code Cong. & Ad.News, *supra* at 5969. The purpose underlying passage of Public Law 94–565 was "to recognize the burden imposed by the tax immunity of Federal lands by providing minimum Federal payments to units of local government within the boundaries of which these lands lie." U.S.Code Cong. & Ad.News, *supra.*

Because federal lands within state and local boundaries are exempt from state or local taxation, various federal statutory provisions in the past had attempted to alleviate the tax burdens imposed on the remaining non-federal (and non-tax-exempt) lands. This was accomplished by sharing with the affected state or local governments the revenue or fees received from federal lands within their boundaries. These revenues or fees were given to the states in the form of payments which could be used only for designated purposes. In many cases these funds were not returned by the state to the local governments in amounts proportionate to the volume of

**64**

federal land located within the local governments' jurisdiction. As a result, some local governments were forced to tax the remaining non-federal lands at a higher rate to meet necessary expenses. Moreover, because many of the funds ultimately received by the local governments were earmarked under the various federal statutes for specific purposes, the local governments were often precluded from utilizing the funds where they were needed most.

Public Law 94–565, 31 U.S.C.A. §§ 1601 *et seq.* as finally enacted alleviated these problems. Section 1601 provided that:

> "[T]he Secretary is authorized and directed to make payments on a fiscal year basis to each unit of local government in which entitlement lands (as defined in section 1606 of this title) are located. Such payments may be used by such unit for any governmental purpose...."

Section 1602(d) provided:

> "In the case of a smaller unit of local government all or part of which is located within another unit of local government, entitlement lands which are within the jurisdiction of both such units shall be treated for purposes of this section as only within the jurisdiction of such smaller unit."

Thus, under the new law, if entitlement lands were located in a state and a county, the county would receive the funds instead of the state. The county could use these funds for any governmental purpose.

Mohave County argues that Arizona's statutory budget limitation attempts to regulate the use and budgeting of federal monies received by Arizona counties—an area only the federal government can regulate. Although we agree that Congress has attempted to define how federal "In Lieu Funds" can be spent, *i.e., for any governmental purpose,* we find that the Arizona budget law neither prevents nor interferes with this use. Mohave County can spend the "In Lieu Funds" for any governmental purpose it chooses. What the county cannot do is tax county property owners at a higher rate because the Board has failed to include "In Lieu Funds" as a source of revenue under A.R.S. § 42–304. The intent of Congress in authorizing "In Lieu Funds" was to *reduce* the burden on taxpayers arising from federal lands located in their taxing jurisdiction. Mohave County's interpretation would *increase* the burden. Arizona's ten-percent limitation on expenditures does not conflict with congressional intent regarding "In Lieu Funds."

The summary judgments granted by the trial court are affirmed.

HOLOHAN, C. J., and STRUCKMEYER, CAMERON and FELDMAN, JJ., concur.

Note: Justice FRANK X. GORDON, Jr., did not participate in the determination of this matter. Retired Justice FRED C. STRUCKMEYER, Jr., sat in his stead.