350 P.3d 841

**GENERAL MOTORS CORPORATION, a Delaware corporation; DMB Mesa Proving Grounds, LLC, a Delaware limited liability company, Plaintiffs/Appellees,**

v.

**MARICOPA COUNTY, Defendant/Appellant.**

No. 1 CA–TX 13–0004.

Court of Appeals of Arizona, Division 1.

May 28, 2015.

Cavanagh Law Firm By Jeffrey B. Smith, William F. Begley, Phoenix, Counsel for Plaintiffs/Appellees.

Helm Livesay & Worthington, Ltd. By Roberta S. Livesay, Raushanah Daniels, Tempe, Counsel for Defendant/Appellant.

Presiding Judge KENT E. CATTANI delivered the opinion of the Court, in which Judge LAWRENCE F. WINTHROP and Judge PETER B. SWANN joined.

## OPINION

CATTANI, Judge:

¶ 1 Arizona Revised Statutes ("A.R.S.") § 42–16002(B)(1)[1] provides that a tax valuation or classification determined in a successful tax appeal "rolls over" to the next tax year unless "[t]here is new construction, a structural change or a change of use on the property." In this appeal, we address the tax court's ruling that a "change of use" under the statute does not include a new owner's intent to redevelop the property for other uses. For reasons that follow, we affirm, concluding that a changed use under § 42–16002(B) must be a physical, objectively verifiable or demonstrable use or activity on the property itself, not just a change in ownership or of purpose, plan, or intent. We also affirm the tax court's ruling that, under A.R.S. § 42–16210, a valuation appeal may be pursued even if taxes that come due while the appeal is pending are not timely paid.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 General Motors Corp. ("GM") operated a motor vehicle research and development desert proving ground on several parcels totaling approximately 3,200 acres in Mesa. In a prior tax appeal, GM challenged Maricopa County's valuation of the proving ground property for, as relevant here, the 2007 tax year. *See Gen. Motors Corp. v. Maricopa County,* TX2005–050340 (Ariz.Tax Ct.). A jury found that the full cash value of the property as of January 1, 2006 (the valuation date for the 2007 tax year, *see* A.R.S. § 42–11001(18)) should be reduced to $89,000,961.

¶ 3 In December 2006, GM sold the property to DMB Mesa Proving Grounds LLC ("DMB") for $265,000,000 pursuant to a sale-leaseback agreement under which GM, as DMB's tenant through 2009, would continue to operate the property as an automotive proving ground for at least two years. During the lease term, DMB retained the right to pursue zoning adjustments and to take other steps in anticipation of redeveloping the property for other purposes.

¶ 4 As of January 1, 2007, the County set the property's full cash value at $187,824,386 for the 2008 tax year. GM and DMB (collectively "Taxpayers") appealed that valuation to the tax court and moved for summary judgment, arguing that, under § 42–16002(B), the full cash value for the 2007 tax year determined by the jury ($89,000,961) should apply to the 2008 tax year as well. The County opposed, arguing that the sale to DMB had created "a change of use on the property," bringing the property within an exception to the rollover provision. *See* A.R.S. § 42–16002(B)(1).[2] The tax court ruled in favor of Taxpayers, and the County timely appealed.

¶ 5 While the tax appeal was pending, the County discovered that Taxpayers had not

---

1. Absent material revisions after the relevant date, we cite a statute's current version.

2. The County also filed a cross-motion for summary judgment, arguing that the full cash value should be adjusted upward to $265,000,000, the price DMB paid to buy the land in December 2006. In granting Taxpayers' motion, the tax court denied the County's motion for summary judgment, and that denial is not a subject of this appeal.

paid the second half of the 2010 taxes owed on the proving ground property until July 15, 2011, after the May 1 delinquency date had passed. *See* A.R.S. § 42–18052(B). At the County's request, this court stayed the appeal and revested jurisdiction in the tax court to address the County's contention that Taxpayers' failure to timely pay the 2010 property taxes required dismissal of the appeal. The tax court denied the County's motion for summary judgment on that ground, and the County filed an amended notice of appeal from that judgment as well. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) and –2101(A)(1).

## DISCUSSION

¶ 6 The County argues—as it did before the tax court—that Taxpayers' appeal should have been dismissed because Taxpayers failed to timely pay property tax while the appeal was pending. Additionally, the County argues that the court should not have applied the rollover statute in determining the property's 2008 valuation because there was a "change of use on the property."

### I. Standard of Review.

■ ¶ 7 We review de novo the tax court's ruling on a motion for summary judgment. *Staples v. Concord Equities, L.L.C.*, 221 Ariz. 27, 29, ¶ 8, 209 P.3d 163, 165 (App.2009). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

■ ¶ 8 We review statutory interpretation and jurisdictional rulings de novo as issues of law. *Orme Sch.*, 166 Ariz. at 305, 802 P.2d at 1004; *Sempre Ltd. P'ship v. Maricopa County*, 225 Ariz. 106, 108, ¶ 5, 235 P.3d 259, 261 (App.2010). The primary goal in statutory interpretation is to effectuate the Legislature's intent. *Id.* at ¶ 9, 235 P.3d 259. To do so, we look first to the plain language of the statute itself. *Sempre*, 225 Ariz. at 108, ¶ 5, 235 P.3d at 261. We consider the statute as a whole, including its context within a broader statutory scheme. *Id.; see also*

*State ex rel. Ariz. Dep't of Revenue v. Capitol Castings*, 207 Ariz. 445, 447, ¶ 9, 88 P.3d 159, 161 (Ariz.2004). We construe tax statutes liberally in favor of the taxpayer and against the government. *See Capitol Castings*, 207 Ariz. at 447, ¶ 10, 88 P.3d at 161.

■ ¶ 9 The County argues that the rollover statute should be strictly construed against the taxpayer because it provides a benefit not available to all taxpayers. But although "tax deductions, subtractions, exemptions, and credits are to be strictly construed," *Ariz. Dep't of Revenue v. Raby*, 204 Ariz. 509, 511–12, ¶ 16, 65 P.3d 458, 460–61 (App.2003), the rollover statute does not provide relief from or diminution of tax liability. Rather, it functions as a valuation (or classification) statute. *See* A.R.S. § 42–16002(B) (determining property valuation or classification in light of result of prior year's tax appeal). As such, it is subject to liberal construction. *See Staples*, 221 Ariz. at 29, ¶ 9, 209 P.3d at 165 (applying liberal construction to interpretation of rollover statute).

### II. Delinquent Tax Statutes.

■ ¶ 10 All parties agree that Taxpayers timely paid their 2008 property taxes (those challenged in this valuation appeal). The County argues, however, that under A.R.S. § 42–11004, Taxpayers' failure to timely pay the 2010 taxes deprives the courts of authority to hear the 2008 valuation appeal.

¶ 11 Section 42–11004 provides:

A person on whom a tax has been imposed or levied under any law relating to taxation *may not test the validity or amount of tax*, either as plaintiff or defendant, if any of the taxes:

1. Levied and assessed in previous years against the person's property have not been paid.

2. That are the subject of the action are not paid before becoming delinquent.

3. Coming due on the property during the pendency of the action are not paid before becoming delinquent.

(Emphasis added). This statute does not apply, however, because a valuation appeal is

340

not an action to "test the validity or amount of tax" within the meaning of this provision. *See RCJ Corp. v. Ariz. Dep't. of Revenue*, 168 Ariz. 328, 331, 812 P.2d 1146, 1149 (Tax Ct.1991); *Scottsdale Princess P'ship v. Maricopa County*, 185 Ariz. 368, 378, 916 P.2d 1084, 1094 (App.1995) (distinguishing between refund action and challenges to classification or valuation).

¶ 12 The statutory scheme bears out the distinction by providing that valuation appeals may only be brought under Chapter 16 of Title 42 (A.R.S. §§ 42–16001 to –16259), not under Chapter 11:

> Any taxpayer who is dissatisfied with the valuation or classification of the taxpayer's property may appeal to court *only* in the time and manner prescribed in chapter 16 of this title.

A.R.S. § 42–11005(D) (emphasis added).

¶ 13 Chapter 16 in turn provides a specific payment requirement applicable to valuation appeals. This requirement (under § 42–16210) applies only to the property taxes challenged in the appeal—not prior years or years that come due while the appeal remains pending:

> A. All taxes levied and assessed against property for the year on which an appeal has been filed by the property owner shall be paid before they become delinquent.
> B. If the taxes are not paid before becoming delinquent, the court shall dismiss the appeal except [if the taxes are paid within a grace period].

¶ 14 The County suggests that applying § 42–16210 and not § 42–11004 to valuation appeals will harm the public treasury by allowing property owners to delay paying future taxes during the pendency of an appeal. But by its terms, § 42–16210 does not have any effect on property owners' ongoing obligation to timely pay property taxes. And this court has recently reaffirmed the distinction between the statutes, noting that " § 42–16210(B) [is] the statute requiring timely payment for all actions brought under Chapter 16—not § 42–11004." *Sonoran Peaks, LLC v. Maricopa County*, 236 Ariz. 399, 402, ¶ 11, 340 P.3d 1107, 1110 (App.2015); *see also RCJ Corp.*, 168 Ariz. at 333, 812 P.2d at 1151 (holding that only the payment requirement of the predecessor statute to § 42–16210, not those of the statutory predecessor to § 42–11004, applied to valuation appeals).

¶ 15 Taxpayers here brought a Chapter 16 valuation appeal. Under § 42–16210, timely payment of the challenged taxes—the 2008 tax year, but not of subsequent years—was a prerequisite to suit. Accordingly, the tax court did not err by declining to dismiss the appeal based on Taxpayers' delinquent payment of 2010 taxes.

**III. Rollover Statute.**

¶ 16 The County argues that the tax court erred in its interpretation of the rollover statute, and thus erroneously determined that the 2007 valuation of the proving ground property determined in a prior tax appeal rolled over as the 2008 valuation as well.

¶ 17 As relevant here, the rollover statute provides:

> B. If a review or administrative appeal pursuant to article 2, 3 or 4 of this chapter [16] or a judicial appeal pursuant to article 5 of this chapter results in a reduction of the valuation or a change in the classification of property, in the next year the valuation or classification of property shall be the valuation or classification that was determined by the review or appeal unless either:
> 1. There is new construction, a structural change or a change of use on the property.
> . . . .

A.R.S. § 42–16002(B). The parties agree that the first two provisions in subsection (1) do not apply, as there was neither new construction nor a structural change on the property. The only dispute is whether there was "a change of use on the property" between the 2007 and 2008 tax years.

¶ 18 During the 2007 tax year, GM owned and operated the property as an automotive proving ground. During the 2008 tax year, GM still operated the proving ground on the property, but as a tenant; the property was owned by DMB, which intended to develop the property at some point in the future. The question is whether this sale-leaseback—which left GM's physical use of the property

unchanged—established a change of use on the property.

¶ 19 "Use" is not defined in the rollover statute. Accordingly, we look to the language and context of the statute to construe the intended meaning of "change of use."[3] The tax court reasoned that the language of the statute "focuses on the objective use to which the property is put" and that a change of use—like new construction or a structural change—"should be equally verifiable by reference to the property, not to its owner." We agree.

¶ 20 This interpretation reads the three triggering changes of § 42–16002(B)(1) in parallel. New construction on the property creates a physical change. A structural change on the property similarly contemplates a physical modification. In this context, "a change of use" should also be understood to refer to a physical use. See Estate of Braden v. State, 228 Ariz. 323, 326, ¶ 13, 266 P.3d 349, 352 (2011) ("[A] statutory term is interpreted in context of the accompanying words."). This is also consistent with the statutory language referencing "a change of use *on* the property." Construing "use" as a physical, objectively verifiable use or activity ensures that the relevant use remains tied to occurrences on the property itself, rather than to the owner's subjective purpose or plan.

¶ 21 Interpreting "use" as an objectively verifiable, physical use or activity on the property promotes clarity. An owner may have many, even contradictory or rapidly changing, subjective intents for the property. For example, even while GM owned the property, at some point GM's plans for the property changed—it offered the property for sale—although the property's demonstrable use as a proving ground remained constant. Tying the change of use to physical, objectively verifiable activity on the property allows a concrete determination of "use" in-

dependent of an owner's subjective and sometimes ill-defined "purpose."

¶ 22 Moreover, contrary to the County's argument, this interpretation does not ignore the owner's use of the property by focusing solely on the tenant's activities. Rather, it tracks the statute's terms by focusing directly on the property itself. Regardless whether the owner or a tenant occupies the property, it is the activities conducted on the property that define the physical, objective use of the land. The owner ultimately controls the use of the property, as it did here, for example, by the terms of a lease agreement, and the owner remains legally responsible for the payment of property taxes. See Circle K Stores, Inc. v. Apache County, 199 Ariz. 402, 407, ¶ 13, 18 P.3d 713, 718 (App. 2001).

¶ 23 Although the ownership of the proving ground property changed—and although DMB's purpose in holding the land may have been different than GM's—the property continued to be used as an automotive proving ground through the 2008 tax year. Because there was no change of use on the property, the rollover provision applied, and the tax court did not err by granting Taxpayers' motion for summary judgment and ordering that the 2008 full cash value be set at $89,000,961.

### III. Attorney's Fees.

¶ 24 Taxpayers seek an award of attorney's fees under A.R.S. § 12–348(B)(1), which authorizes a discretionary award of fees to a taxpayer that prevails in its challenge to assessment or collection of taxes. In our discretion, we award Taxpayers their reasonable attorney's fees, as limited by § 12–348(E), upon compliance with ARCAP 21. As the prevailing parties, Taxpayers are entitled to an award of costs upon compliance with ARCAP 21.

---

**3.** Although the statute determines valuation or classification in certain circumstances, it does not provide a valuation method or classification criteria, and it therefore is neither a standard valuation or classification statute. Thus, the various definitions of "use" for those purposes are not dispositive. See, e.g., Krausz v. Maricopa County, 200 Ariz. 479, 28 P.3d 335 (App.2001) (distinguishing between owners' and tenants' use of property for classification purposes); Hayden Partners Ltd. P'ship v. Maricopa County, 166 Ariz. 121, 800 P.2d 987 (App.1990) (describing relevant intended use for certain classification purposes).

CONCLUSION

¶ 25 The judgment is affirmed.