IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

AHMAD ZAKY QASIMYAR, *Plaintiffs/Appellees,*

*v.*

MARICOPA COUNTY, *Defendant/Appellant.*

No. 1 CA-TX 19-0008
FILED 2-11-2021

Appeal from the Arizona Tax Court
No.  TX 2016-000882
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Helm, Livesay & Worthington LTD, Mesa
By Roberta S. Livesay, Joshua W. Carden
*Counsel for Defendant/Appellant*

Mooney, Wright, Moore & Wilhoit PLLC, Mesa
By Bart Wilhoit, Paul Moore, Jim L. Wright, Paul J. Mooney
*Counsel for Plaintiffs/Appellees*

Arizona Attorney General's Office, Phoenix
By Jerry A. Fries, Lisa A. Neuville
*Counsel for Amicus Curiae, Arizona Department of Revenue*

---

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1        In this tax dispute, several property owners ("Taxpayers") challenge the Maricopa County Assessor's decision to apply what is known as "Rule A," *see* A.R.S. § 42-13301, to calculate the limited property value ("LPV") of their single-family residences ("Properties"). Taxpayers contend that because the Properties were reclassified based on the owners' occupation of the Properties as their primary residences, this was a "change in use" that required calculation of LPV pursuant to "Rule B," *see* § 42-13302(A)(2). The tax court agreed with Taxpayers and granted partial summary judgment on that basis. The court also granted Taxpayers' motion for class certification, which we address in a separate memorandum decision. We hold that because the legislature enacted two property classifications expressly applicable to mutually exclusive "use[s]" in § 42-12003(A)(1) (class three) and § 42-12004(A)(1), (2) (class four), a property's reclassification between the two constitutes a "change in use" that triggers use of Rule B under § 42-13302(A)(2).

## BACKGROUND

¶2        Applying the Arizona Department of Revenue's ("Department") *Property Use Code Manual* (rev. 2000) ("*PUC Manual*"), the Assessor designated the Properties as single-family residences for tax year 2016. Taxpayers do not dispute these designations. The Assessor also classified each Property as class four, under either § 42-12004(A)(1) (residential property not otherwise falling in another classification) or (A)(2) (leased or rented residential property not otherwise falling in other enumerated classifications).

¶3        For tax year 2017, the Assessor changed neither the Properties' use codes nor their classifications, and therefore used Rule A to determine their LPVs under § 42-13301. Taxpayers unsuccessfully petitioned the Assessor for administrative review, arguing that because the Properties in fact were "owner-occupied," the Assessor should have

classified them as class three, not class four. *See* A.R.S. § 42-12003(A)(1) (class three includes owner-occupied primary residences).

**¶4** Taxpayers appealed the Assessor's decision to the State Board of Equalization, which reclassified the Properties as class three but did not change the Assessor's LPVs of the Properties. Taxpayers then appealed the Board's decision to the tax court, arguing that a "change in use" occurred when the Properties were reclassified from class four to class three as owner-occupied primary residences, requiring the Assessor and Board to calculate the LPVs pursuant to Rule B instead of Rule A. *See* A.R.S. § 42-13302(A)(2) (LPV calculated under Rule B if "change in use" occurs for property). According to Taxpayers, a Rule B calculation would have reduced the LPVs, resulting in a lower property tax bill. Taxpayers requested revised LPVs calculated under Rule B and refunds for the overpaid tax.

**¶5** The tax court granted partial summary judgment for Taxpayers, agreeing that "where there is a change in classification based upon the change in use of a residential property, as is the case when its use changes from a [c]lass [four] to a [c]lass [three] property, a new [LPV] must be established." After the court entered a judgment under Arizona Rule of Civil Procedure ("Rule") 54(b), the County timely appealed.

## DISCUSSION

**¶6** We review de novo both the tax court's grant of summary judgment and its interpretation of our tax statutes. *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480, ¶ 8 (2018). In construing a statute, we begin with its text. *Id.* If the text is unambiguous, we apply it without further analysis. *Id.* A statute is ambiguous "when it is open to multiple reasonable interpretations, and when its meaning is not evident after examining the statute's text as a whole or considering statutes relating to the same subject or general purpose." *Glazer v. State*, 244 Ariz. 612, 614, ¶ 12 (2018) (citations omitted). "[A]mbiguities in 'revenue statutes should be construed liberally in favor of the taxpayer and strictly against the state.'" *City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 241, ¶ 22 (2019) (citation omitted).

### A. The Assessed Valuation Process

**¶7** To understand the relevant statutes in their proper context, we begin with a brief overview of Arizona's property taxation system. "Valuation and classification are two factors that together produce a parcel's 'assessed valuation' for property tax purposes." *Scottsdale/101*

*Assocs., LLC v. Maricopa County*, 238 Ariz. 291, 293, ¶ 8 (App. 2015) (quoting A.R.S. § 42-11001(1)).

### 1.      Valuation

**¶8**            Under the Department's supervision, "[t]he Assessor determines the first factor, valuation, by applying a statutory formula or by estimating the market value of the property" to determine its full cash value ("FCV").  *Id.* (citing A.R.S. § 42-11001(6)); *see also* A.R.S. § 42-13002(A)(1) (Department must "[e]xercise general supervision over county assessors in administering the property tax laws to ensure that all property is uniformly valued for property tax purposes.").   To facilitate this process, our legislature requires the Department to issue, and county assessors to use, "guidelines for applying standard appraisal methods and techniques." A.R.S. § 42-11054(A)(1).   The Department also is required to maintain a manual on property valuation.  A.R.S. §§ 42-11054(A)–(B), -13051(B)(2); *see* Ariz. Dep't of Revenue, *Assessment Procedures Manual* (rev. 2018) ("*Assessment Procedures Manual*").  "*Current usage* shall be included in the formula for reaching a determination of full cash value." A.R.S. § 42-11054(C)(1) (emphasis added).  Although "[c]urrent usage" is defined as "the use to which property is put at the time of valuation by the assessor or the department," § 42-11001(4), "use" itself is not statutorily defined.

**¶9**            Since 2015, however, most property taxes are levied not based on FCV, but rather LPV.  *See* Property Tax Assessed Valuation— Constitutional Amendment Approved, S. Con. Res. 1025 (Ariz. 2012) (Proposition 117, amending Ariz. Const. art. 9, § 18, approved by voters); 2013 Ariz. Sess. Laws, ch. 66 (1st Reg. Sess.) (amending property tax statutes to conform with Proposition 117); *see also* A.R.S. § 42-11001(7) (defining LPV); § 42-13304 (limited exceptions in which FCV, not LPV, is still used as basis to calculate property tax).

**¶10**            There are two ways to calculate LPV.  The first, Rule A, is the general rule.  It provides that LPV "for property taxation purposes is the [LPV] of the property in the preceding valuation year plus five percent of that value," so long as that figure does not exceed FCV.  A.R.S. § 42-13301(A)–(B).  Rule A is intended to "prevent[] rapid rises in [LPV] . . . that might result from market increases." *Premiere RV & Mini Storage, LLC v. Maricopa County*, 222 Ariz. 440, 442, ¶ 4 (App. 2009).

**¶11**            Rule B, in turn, is triggered by certain enumerated events as an exception to Rule A, and "permits LPV to be determined by reference to

the value of comparable properties." *Id.* As of the valuation date for tax year 2017, Rule B stated:

> A. In the following circumstances the limited property value shall be established at a level or percentage of full cash value that is comparable to that of other properties of the same or similar use or classification:
>
> 1. Property that was erroneously totally or partially omitted from the property tax rolls in the preceding tax year.
>
> 2. *Property for which a change in use has occurred* since the preceding tax year.
>
> 3. Property that has been modified by construction, destruction or demolition since the preceding valuation year.
>
> 4. Property that has been split, subdivided or consolidated from January 1 through September 30 of the valuation year, except for cases that result from an action initiated by a governmental entity.

A.R.S. § 42-13302(A) (2016) (emphasis added); *see also* § 42-11001(19) (valuation date for tax year 2017 is January 1, 2016). Depending on the circumstances, applying Rule B may result in a higher or lower LPV than would be produced under Rule A, ultimately affecting the final property tax bill. *See Premiere RV*, 222 Ariz. at 442, ¶ 4 (explaining that "[i]n a rapidly appreciating real estate market, it is to the taxpayer's advantage to have a Rule B valuation applied as early as possible," and "[i]n a declining market, delayed application of Rule B benefits the taxpayer, as the valuation then reflects more of the decrease in surrounding property values").

### 2. Classification

¶12      "The Legislature determines the second factor, classification, by enacting statutes that determine a property's legal class and corresponding assessment ratio." *Scottsdale/101 Assocs.*, 238 Ariz. at 293, ¶ 8; *see also* A.R.S. §§ 42-12001 to -12009 (defining classes one through nine); §§ 42-15001 to -15009 (setting assessment percentages). These nine classes were established for the "common treatment" of like property by assigning a "common assessment percentage" for each class. A.R.S. § 42-12010(A).

¶13      Property classifications are generally based on (1) a property's use or (2) its qualifying status. *See Scottsdale Princess P'ship v. Maricopa*

*County*, 185 Ariz. 368, 378 (App. 1995) (properties classified "according to specific character and use"); *Krausz ex rel. KGC Tr. I v. Maricopa County*, 200 Ariz. 479, 483, ¶ 17 (App. 2001) (taxpayers' "use" of property controls classification); *see also Assessment Procedures Manual*, pt. 3, ch. 1, at 2 ("Current use or qualifying status is the basis for differentiating the main categories of real and personal property between the nine property classes."). In determining a property's classification, "we must be guided by the language of the governing classification statutes themselves." *Krausz*, 200 Ariz. at 481, ¶ 8.

¶14        As relevant here, classification of residential property turns on its "use." A.R.S. §§ 42-12003(A), -12004(A). Class three property includes:

> Real and personal property and improvements to the property that are *used as the owner's primary residence*, that are *not otherwise included* in class one, two, four, six, seven or eight and that are valued at full cash value.

A.R.S. § 42-12003(A)(1) (2016) (emphasis added). Class four, in turn, includes:

> 1. Real and personal property and improvements to the property that are *used for residential purposes*, including residential property that is owned in foreclosure by a financial institution, that is *not otherwise included* in another classification and that is valued at full cash value.
> . . . .
>
> 2. Real and personal property and improvements to the property that are *used solely as leased or rented property* for residential purposes, that are *not included* in class one, two, three, six, seven or eight and that are valued at full cash value.

A.R.S. § 42-12004(A) (2016) (emphasis added). Thus, under § 42-12003(A)(1), a residence used as the owner's primary residence is generally a class three property. Class four encompasses other residences, including a broad category of those "not otherwise included" in class three, § 42-12004(A)(1), and another category of those "used solely as leased or rented property" and "not included" in class three, § 42-12004(A)(2). Given the legislature's inclusion of the phrase "not otherwise included" or "not included" in the above provisions, it is not possible for a property to fall within these subsections of *both* class three and class four—the two are mutually exclusive categories. *Compare* A.R.S. § 42-12003(A)(1), *with* § 42-

12004(A)(1), (2).  More specifically, once an owner occupies a property as a primary residence under class three, the property cannot be included within class four.

¶15        After classifying a parcel of property, the Assessor produces its "assessed valuation" by multiplying the property's LPV by its assessment ratio.  A.R.S. §§ 42-11001(1), -15010(A).  The tax rate is then applied to the assessed valuation to determine the amount of taxes owed.  *Stewart Title & Tr. of Tucson v. Pima County*, 156 Ariz. 236, 237 (App. 1987).

### B.        Meaning and Application of "a Change in Use"

¶16        Considering this framework, we must determine when "a change in use" for real property occurs for purposes of triggering Rule B under § 42-13302(A)(2).  The County argues "a change in use" means "a change in the use determined by the Assessor for valuation of the property," and that "use" refers to a change in "objectively verifiable, physical use of the property."  Thus, according to the County, a mere change between class four and class three based on *who* is occupying the property, with no change in *how* the property is physically, objectively being used, does not constitute a "change in use" sufficient to trigger Rule B.  In contrast, Taxpayers argue that because the legislature created the subsections quoted above that distinguish between class three properties and class four properties based on mutually exclusive "uses," changing between those classes necessarily constitutes a "change in use" that requires Rule B's application.

¶17        As a preliminary matter, we agree with the County that the terms "use" and "classification" are not synonymous because the phrase "use or classification" appears in § 42-13302(A)'s introductory provision, while (A)(2)'s triggering language is *only* a "change in use," with no mention of classification.  Concluding that *every* change in classification necessarily entails a change in use, therefore, would nullify the earlier inclusion of the word "classification" in § 42-13302—a result we avoid if possible.  *See Orbitz Worldwide Inc.*, 247 Ariz. at 238, ¶ 10 (noting principle that if possible, courts will construe statutes so that no word or provision is rendered superfluous); *see also, e.g.*, A.R.S. § 42-13252(C)(3) ("use" and "classification" employed as different terms within a single provision).  But this conclusion does not end our inquiry.  Just because reclassifying a property does not necessarily "change [its] use" does not mean it *never* can.  When two classes encompass distinctive and mutually exclusive uses, in some instances changing between those classes may, as a matter of law, constitute "a change in use" that triggers Rule B.

**¶18** Further, we must construe "a change in use" not in isolation, but in context with the above classification statutes because they relate to the same subject—property taxation—and serve the same goal, producing a property's assessed valuation. *See Scottsdale/101 Assocs.*, 238 Ariz. at 293, ¶ 9 (valuation and classification are distinct factors, but are "*related*" in the "property tax equation") (emphasis added); *see also Glazer*, 244 Ariz. at 614, ¶ 10 ("'plain language' interpretation does not focus on statutory words or phrases in isolation"). Therefore, we must seek to harmonize §§ 42-13302, -12003, and -12004. *See David C. v. Alexis S.*, 240 Ariz. 53, 55, ¶ 9 (2016) ("Statutes that are in pari materia—those of the same subject or general purpose—should be read together and harmonized when possible."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) ("Any word or phrase that comes before a court for interpretation is . . . part of an entire *corpus juris*. . . . Hence laws dealing with the same subject . . . should if possible be interpreted harmoniously.").

**¶19** In addition, a word or phrase used in related statutes should be construed to bear the same meaning throughout. *See Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 88, ¶ 17 (2019) (standard for "good cause" among various Arizona Rules of Procedure for the Juvenile Court "should be consistent because the language of these rules is identical or substantially similar"); *see also* Scalia & Garner, *supra*, at 172–73 ("The presumption of consistent usage applies also when different sections of an act or code are at issue. . . . [T]he more the connection the cited statute has with the statute under consideration, the more plausible the argument becomes."). Accordingly, we presume the word "use" in § 42-13302(A)(2) has a similar meaning as the word "used" in §§ 42-12003(A)(1) and -12004(A)(1), (2). Although the County maintains we should not equate the two terms because "use" appears as a noun in the former and a verb in the latter, it is "reasonable" to construe "a word used as both a noun and a verb" in a statute as having a similar meaning in both instances. *See United States v. Granderson*, 511 U.S. 39, 46 (1994) (citation omitted).

**¶20** Under these principles, we conclude "a change in use" in § 42-13302(A)(2) is unambiguous. When a class three residential property "used as the owner's primary residence," § 42-12003(A)(1), becomes "used" for other "residential purposes" or "solely as leased or rented property for residential purposes," § 42-12004(A)(1), (2), or vice versa, that property's reclassification between classes three and four is a "change in use" that triggers Rule B, § 42-13302(A)(2). Because harmonizing these statutes results in an unambiguous construction of "a change in use" necessary to resolve this dispute, we need not decide when "a change in use" occurs in hypothetical situations not before us. *See San Carlos Apache Tribe v. Superior*

*Court ex rel. Cnty. of Maricopa*, 193 Ariz. 195, 203, ¶ 6 (1999) ("We . . . confine ourselves to determining those issues properly raised by the parties and necessary to our determination" of the dispute.).

**¶21** Because Taxpayers' Properties were reclassified from class four, § 42-12004(A)(1), (2), to class three, § 42-12003(A)(1), a "change in use" occurred and new LPVs must be calculated under Rule B. *See* A.R.S. § 42-13302(A)(2).

### C.     The County's Arguments

**¶22** We are not persuaded by the County's various arguments to the contrary. First, the County argues that "use" for purposes of Rule B "refers to the objectively verifiable, physical use of the property," citing *General Motors Corp. v. Maricopa County*, 237 Ariz. 337 (App. 2015). In that case, a company operating an automotive proving ground on its property successfully lowered its 2007 valuation amount through a tax appeal. *Id.* at 338, ¶ 2. It then sold the property and leased it back from the buyer, continuing to operate it as a proving ground, although the new owner planned to redevelop the property for other purposes. *Id.* at ¶¶ 1, 3. When the County revalued the property at a higher amount the following year, the company and the new owner challenged the revaluation, arguing a "rollover" provision applied—a statute stating that if an appeal of an assessment results in a reduction in valuation, that reduced valuation "rolls over" to the next year unless "[t]here is new construction, a structural change or *a change of use on the property*." *Id.* at 338, 340, ¶¶ 2, 4, 17 (emphasis added) (quoting A.R.S. § 42-16002(B)(1)). The County argued that because the property was sold to a new owner that promptly leased it back to the seller, this constituted a "change of use" falling within the exception to the rollover provision. *Id.* at 338, 341, ¶¶ 4, 22.

**¶23** We concluded that this sale-leaseback deal, which resulted in new ownership but left the "physical use of the property unchanged," was *not* a change of use. *Id.* at 340–41, ¶¶ 18–19. Construing "change of use" in context with the other two statutory triggers in the same subsection of the rollover exception—"new construction" and "a structural change"—we observed the latter two phrases expressly contemplated some sort of *physical change* to the property. *Id.* at 340–41, ¶¶ 17, 19–20. We reasoned that under the *noscitur a sociis* canon, "'a change of use' should also be understood to refer to a physical use." *Id.* at 341, ¶ 20 (citing *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 326, ¶ 13 (2011) (*noscitur a sociis* canon "dictates that a statutory term is interpreted in context of the accompanying words")). We explained that regardless of whether a property is occupied

by the owner or tenant, "it is the activities conducted *on the property* that define the physical, objective use of the land." *General Motors*, 237 Ariz. at 341, ¶ 22 (emphasis added). We therefore held that "a changed use under § 42-16002(B) must be a physical, objectively verifiable or demonstrable use or activity on the property itself, not just a change in ownership or of purpose, plan, or intent." *Id.* at 338, ¶ 1.

**¶24** *General Motors* does not apply here for several reasons. Unlike the statutes at issue in that case, here the legislature *specifically* defined the discrete uses at issue: property "used as the owner's primary residence," A.R.S. § 42-12003(A)(1), versus property "used" as rental property or for other residential purposes, A.R.S. § 42-12004(A)(1), (2). We "take [the legislature] at its word," *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, 2207 (2020), and need not rely on *General Motors*' construction of a separate statute applicable to a different factual scenario.

**¶25** Our analysis in *General Motors* also noted the significance of the legislative wording: "'a change of use *on* the property.'" *See* 237 Ariz. at 341, ¶ 20. Rule B, in contrast, is triggered by "[p]roperty *for* which a change *in* use has occurred." A.R.S. § 42-13302(A)(2) (emphasis added). In *General Motors*, we treated the legislature's choice of the word "on" as material, noting that our construction of "use" as "a physical, objectively verifiable use or activity ensures that the relevant use remains tied to occurrences *on* the property itself." 237 Ariz. at 341, ¶ 20 (emphasis added). Because "a material variation in terms suggests a variation in meaning," *Diaz v. Bernini*, 246 Ariz. 114, 118, ¶ 16 (2019) (quoting Scalia & Garner, *supra* at 170), our construction of the rollover exception statute in *General Motors* does not bear on the meaning of § 42-13302(A)(2).

**¶26** In addition, *General Motors* in no small part relied upon the new owner's "subjective purpose or plan" for the property, a factor that is not at issue here. *See General Motors*, 237 Ariz. at 338, 341, ¶¶ 1, 3, 20, 21, 23. And finally, construing "a change in use" in § 42-13302(A)(2) to mean a change in "*physical, objectively verifiable* use," *General Motors*, 237 Ariz. at 341, ¶ 20, "would require us to add words to the statute that are not there," which we decline to do, *In re Estate of Riley*, 231 Ariz. 330, 333, ¶ 14 (2013). Therefore, *General Motors*' construction of the rollover statute is inapposite.

**¶27** Second, the County argues "[c]urrent use applies to valuation, not classification." Although the County is correct that the legislature requires "[c]urrent usage" (notably, not "use" or "usage") to be included in the formula to determine a property's FCV in the valuation process, § 42-11054(C)(1), "[c]urrent usage" is merely "the use to which

property is put at the time of valuation by the assessor or the department," § 42-11001(4). Thus, the definition of "current usage" "controls the timing of the determination of the relevant use," *Krausz*, 200 Ariz. at 481, ¶ 6, but neither defines "use" nor confines the concept of property use *only* to the valuation process.

¶28 Third, the County contends "a change in use" refers to "a change in the use determined by the Assessor for valuation of the property." Essentially, the County argues that because the Assessor designated and valued the Properties as "single family residence[s]" by using the Department's *PUC Manual*, and those designations did not change, no "change in use" occurred. The County, however, fails to offer legal authority supporting this argument. Even assuming that "use" for Rule B purposes refers to uses described in the *PUC Manual*, we fail to see how this would trump the legislature's decision to define certain "uses" of property as it deems appropriate—even if those definitions appear in classification statutes instead of in the statutory provisions describing Rule B. Because classifications are related statutes that may take into account a property's use, we enforce the legislature's choice to enumerate two mutually exclusive ways for owners to "use[]" residential property—by occupying it as a primary residence or not. A.R.S. §§ 42-12003(A)(1), -12004(A)(1), (2). "Had the legislature intended otherwise, it would have so indicated by its choice of words." *Columbia Parcar Corp. v. Ariz. Dep't of Transp.*, 193 Ariz. 181, 185, ¶ 21 (App. 1999).

¶29 Fourth, the County argues that Taxpayers selectively emphasize the word "use," thereby disregarding other tax statutes that describe the "qualifying occupancy of property as a 'primary residence'" without using the word "use." *See, e.g.*, A.R.S. § 42-12003(3) ("property that is *owned and occupied* as the primary residence of the owner") (emphasis added); § 42-12052(B) (property "meets the requirements of a primary residence" or a "secondary residence"); § 42-12053(A) ("parcel is not considered a secondary property or rental property if the property is *occupied* by" certain family members) (emphasis added); § 42-12053(B) (Department must set criteria for "owner-*occupied* residential property" and "whether the property is considered to be the owner's or relative's primary residence") (emphasis added); § 42-12052(B)(1), (2) (requiring proof that property is "*occupied* as the owner's primary residence," or that "property is *occupied* by the owner" (emphasis added)). The County contends that to harmonize these statutes and thus avoid rendering any language superfluous or contradictory, we must construe an owner's occupation of a residence as his or her primary residence as a "qualifying requirement," rather than a "use."

¶30 We presume, however, that the legislature meant what it said when it chose to distinguish between class three and class four based on a property's "*use*[]" rather than its qualifying status. *See First Credit Union v. Courtney*, 233 Ariz. 105, 111, ¶ 23 (App. 2013). If, as the County suggests, the legislature intended to base these classifications on qualifying status, it "could have easily done so." *See SCA Constr. Supply v. Aetna Cas. & Sur. Co.*, 157 Ariz. 64, 66 (1988). For example, for a home to qualify as "[n]oncommercial historic property" under class six, § 42-12006(1), the homeowner must apply to the Assessor, § 42-12102(A)(1), and the property must be listed in the national register of historic places, § 42-12101(2)(a). Therefore, it is the property's change in *qualifying status* as "historic," not a change in use, that allows reclassification to class six in this scenario.

¶31 In contrast, here the legislature defined two distinct categories of "uses" of residential property—one "used" by the owner as a primary residence, and the other "used" by anyone else, and it is not within our authority to usurp this decision. *See City of Phoenix v. Butler*, 110 Ariz. 160, 162 (1973) ("The choice of the appropriate wording rests with the Legislature, and the court may not substitute its judgment for that of the Legislature."). Contrary to the County's position, construing these statutes as describing a qualifying status rather than use would render the word "use" as superfluous or insignificant, which we avoid. *See Cain v. Horne*, 220 Ariz. 77, 80, ¶ 10 (2009). Indeed, § 42-12054 provides that when an owner petitions the county board of supervisors to reclassify a residence to class three, if the board "finds that the property is in fact being *used for the owner's primary residence* and should be listed as class three property, it shall change the classification." A.R.S. § 42-12054(F) (emphasis added).

¶32 In short, a property owner's decision to occupy a property as his or her primary residence, rather than occupying it only as a second home or leasing it to tenants, establishes the "use" of that property within the meaning of the classification statutes. We are not at liberty to question the wisdom of that legislative decision. *See Giss v. Jordan*, 82 Ariz. 152, 159 (1957) ("The questions of the wisdom, justice, policy or expediency of a statute are for the legislature alone.").

¶33 Finally, the County cites the legislative history of §§ 42-12003 and -12004, asserting it shows the legislature differentiated between class three and class four residential properties only to allow the owner of a primary residence to "qualify for a homeowner's tax rebate," rather than codifying property uses for valuation purposes. *See* 2011 Ariz. Sess. Laws, ch. 1, §§ 8, 77 (2d Spec. Sess.) (amending A.R.S. §§ 15-972, 42-12003, and -12004). Because we conclude the relevant statutory provisions are

unambiguous, legislative history is irrelevant to our analysis. *See Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 407, ¶ 17 (2005) (consideration of legislative history "not appropriate" when law is "clear and unambiguous"). And evidence purporting to show legislative intent cannot supersede the unambiguous words in a statute. *See El Paso Nat. Gas Co. v. Mohave County*, 133 Ariz. 59, 62 (1982) (declining to consider legislature's objectives and concerns in adopting budget law because language used in the statute was unambiguous).

**CONCLUSION**

¶34 Because the legislature chose to distinguish class three properties from class four properties in this scenario based on mutually exclusive "use[s]" of the property, §§ 42-12003(A)(1), -12004(A)(1), (2), an owner's occupation of a property as a primary residence that causes the property's reclassification from class four to class three necessarily constitutes a "change in use" that triggers Rule B under § 42-13302(A)(2). Accordingly, we affirm the tax court's grant of partial summary judgment to Taxpayers.

