28 P.3d 335

**F. Ron KRAUSZ and Elana Krausz Pyle, in their capacities as Trustees of the KGC Trust I, Plaintiffs–Appellants,**

v.

**MARICOPA COUNTY, Defendant–Appellee.**

No. 1 CA–TX 00–0022.

Court of Appeals of Arizona, Division 1, Department T.

July 12, 2001.

480

Fennemore Craig, P.C., By Paul J. Mooney, Jim L. Wright, Phoenix, Attorneys for Plaintiffs–Appellants.

Law Office of Jerry A. Fries, By Jerry A. Fries, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 F. Ron Krausz and Elana Krausz Pyle ("Taxpayers") appeal from summary judgment approving the commercial classification of Taxpayers' office building by Maricopa County ("the County"). The office building was leased to and used by the Arizona Department of Environmental Quality ("ADEQ"). The dispositive question is whether real property that is not specifically included within a legal class other than class one (commercial) pursuant to Arizona Revised Statutes ("A.R.S.") section 42–12001(12)(Supp.2000),[1] and whose owner leases it for profit to a government tenant, is "devoted to any other commercial or industrial use" under A.R.S. section 42–12001(12). We conclude that it is and therefore affirm.

## FACTS AND RELEVANT PROCEDURAL HISTORY

¶ 2 Taxpayers own an eight-story office building in Maricopa County. Since 1991, ADEQ has been the principal tenant of the building. From the beginning of its tenancy, ADEQ has used its leased space to carry out its governmental duties.

¶ 3 The County has consistently classified Taxpayers' building as class one (commercial) property. See A.R.S. section 42–12001(12).

Taxpayers brought this tax court appeal to challenge the commercial classification of the portion of the building that they leased to ADEQ during tax year 1999. The tax court sustained the County's classification. We have jurisdiction of Taxpayers' appeal pursuant to A.R.S. section 12–2101(B)(1994).

## STANDARD OF REVIEW

¶ 4 On appeal from summary judgment when the material facts are not in dispute, we examine whether the lower court correctly applied the law and whether the appellant was entitled to judgment as a matter of law. We conduct a *de novo* review of the interpretation of statutes. *Cable Plus Co. v. Arizona Dep't of Revenue*, 197 Ariz. 507, 509, ¶ 10, 4 P.3d 1050, 1052 (App.2000); *Blum v. State*, 171 Ariz. 201, 203–04, 829 P.2d 1247, 1249–50 (App.1992).

## ANALYSIS

¶ 5 Arizona Revised Statutes section 42–12001 lists several types of commercial property that are to be taxed as class one property. Section 42–12001(12) provides that property put to "any other commercial ... use, other than property that is specifically included in another class" shall be taxed as class one property. Although governmental use falls within no other specific class, Taxpayers argue that their tenant's governmental use of the subject property controls the property's classification, thereby disqualifying it from classification as commercial class one property.

¶ 6 Taxpayers first rely on A.R.S. section 42–11054(B)(1999), which provides: "In applying prescribed standard appraisal methods and techniques, current usage shall be included in the formula for reaching a determination of full cash value." But that statute does not help taxpayers here because it provides only that "current usage" must be considered in determining property tax values. See A.R.S. § 42–11001(4)(Supp.2000) (" 'Current usage' means the use to which property

---

1. Previously A.R.S. section 42–162(A)(3) (1991). Renumbered as A.R.S. section 42–12003 (1999), then revised in form and renumbered as A.R.S. section 42–12001(12) (Supp.2000), effective for tax year 2000 and following. To facilitate application of this opinion in the future, we use the relevant statutes' current numbering unless the context requires otherwise.

is put at the time of valuation by the assessor or department."). Accordingly, A.R.S. section 42–11054(B) controls the timing of the determination of the relevant use, but it does not require that the tenant's use of the property, rather than the landlord's, be the applicable "use" for purposes of classification .[2] Section 42–11054(B) therefore does not apply in this matter.

¶ 7 Taxpayers next argue that, because A.R.S. section 42–12004(A)(1)(Supp.2000) creates a separate classification ("class four") for leased *residential* property, thereby segregating it from other putatively commercial property, the overall legislative intent must be to rely only on the tenant's "actual physical use" of the property when determining classification. We disagree.

¶ 8 The legislature clearly desired a separate specific class for leased residential property. It accomplished its purpose by creating class four property that includes real and personal property and improvements "used solely as leased or rented property for residential purposes, that are not included in class one [including commercial], two, three, six, seven or eight." A.R.S. § 42–12004(A)(1). Class four constitutes an exception to the broader class one "commercial" property, which is property "devoted to any ... commercial or industrial use, other than property that is specifically included in another class."[3] A.R.S. § 42–12001(12). But, contrary to Taxpayers' proffered inference, the legislative creation of this separate class four only bolsters our conclusion that we must be guided by the language of the governing classification statutes themselves, rather than by the interpretation offered by Taxpayers.

¶ 9 The adoption of A.R.S. section 42–12004(A)(1) illustrated the need to statutorily segregate leased residential property lest it be classified as commercial. Without the

statute, class one would have arguably included leased residential property because the owner could have been viewed as putting the property to a commercial use. With the adoption of A.R.S. section 42–12004(A)(1), such property plainly falls within the narrower classification of leased residential property, and thereby is excluded from the broader commercial classification created by A.R.S. section 42–12001. In such circumstances, the narrower classification controls. *City of Phoenix v. Superior Court*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286(1984); *Drexel Heights Fire Dist. v. City of Tucson*, 175 Ariz. 488, 489, 858 P.2d 321, 322 (App.1993). But without such a statute, the broader classification would control.

¶ 10 Taxpayers next point to the responses given by Ron Loder of the Maricopa County Assessor's Office to the hypotheticals posed by Taxpayers' attorneys. Loder was asked to address situations in which an owner of property leases it to a tenant who uses it for a residence (A.R.S. section 42–12004(A)(1)), for a business (A.R.S. section 42–12001(12)), for a day-care center or preschool (A.R.S. section 42–12004(A)(2)), or for an agricultural establishment (A.R.S. section 42–12002(1)(a),(2)(a) (Supp.2000)). For each hypothetical, Loder testified that the tenant's use of the property would control its classification. Taxpayers claim that his answers bolster their position that the tenant's use must control.

¶ 11 What Taxpayers ignore, however, is that in all the foregoing hypotheticals the tenant's use of the property brought it within a *specific* property tax classification, thereby controlling the outcome. The situation in Taxpayers' case is quite different. Here, it is only the landlords' use of the property that places it within a property tax classification. Taxpayers lease their building for profit, and

---

2. Taxpayers also rely on the language of the classification statutes themselves, A.R.S. sections 42–12001 through 42–12009 (Supp.2000), that they claim focus on the use of property. But we find nothing in the text of these sections or their predecessors that suggests that the "use" on which a property's classification turns can only be that of the tenant. Nor have taxpayers provided any basis for attributing such intent to the legislature.

3. Former A.R.S. § 42–12003(2)(1999), in effect during the tax year at issue, similarly defined the commercial classification as property "devoted to any commercial or industrial use other than property that is included in class one, two, four, six [rented residential property], seven, eight, nine or ten."

thereby put it to a commercial use within the meaning of A.R.S. section 42–12001(12). It is only the tenant, ADEQ, that puts the leased building space to a governmental use, which does not fall within the terms of any specific property tax classification that would override section 42–12001(12). Accordingly, Taxpayers' property is "devoted to . . . any commercial . . . use" and is properly classified as class one (commercial) property. A.R.S. § 42–12001(12).

¶ 12 The principal cases upon which Taxpayers rely provide no support for their argument. *Stewart Title & Trust v. Pima County,* 156 Ariz. 236, 242–43, 751 P.2d 552, 558–59 (App.1987), *superseded by statute on other grounds recognized by City of Phoenix v. Paper Distribs. of Arizona, Inc.,* 186 Ariz. 564, 568, 925 P.2d 705, 709 (App.1996), concerned property whose owner sought classification as class two property "used for agricultural purposes" under the predecessor of A.R.S. section 42–12002(1)(a) and (2)(a). *See also* A.R.S. § 42–13101(A) (1999) ("Land that is used for agricultural purposes shall be valued using only the income approach to value without any allowance for urban or market influences."). Although the property's owner leased the property to a person who put it to a *bona fide* agricultural use, because the owner himself intended to hold the property for investment purposes, the county assessor contended that the property should be classified and valued under the far less favorable residual provisions of A.R.S. section 42–12002(1)(e) and (2)(e). *Stewart Title,* 156 Ariz. at 239–40, 751 P.2d at 555–56.

¶ 13 Division Two of this court disagreed. The court determined that the purpose of the special valuation provision for agricultural property (now expressed in A.R.S. section 42–13101(A)(1999)) was

> [t]o reinforce the concept of current usage in determining valuation with respect to property used for agricultural purposes. Under this interpretation, leased land which otherwise meets the Department's guidelines for agricultural property . . . must be given that classification and valued using solely the income approach set forth in the statute, notwithstanding the fact that the owner intends ultimately to

sell or develop the property for other purposes. To hold otherwise would render the amendment meaningless and ineffectual.

*Id.* at 243, 751 P.2d at 559. Accordingly, *Stewart Title*'s holding was driven by the specific language and underlying policy of the statutes governing valuation of property used for agricultural purposes. That case does not, however, support the conclusion that the tenant's use of leased property, no matter what its nature, renders the property owner's use immaterial to the property's classification.

¶ 14 Taxpayers' reliance on *Hibbs v. Calcot, Ltd.,* 166 Ariz. 210, 801 P.2d 445 (App. 1990), is likewise misplaced. That case had nothing to do with leased property. The *Hibbs* court merely determined that a nonprofit corporation's use of its property for commercial purposes mandated a commercial classification for the property regardless of the owner's non-profit nature. *Id.* at 217, 801 P.2d at 452. The significance of a lessor's "use" of its property, as opposed to that of its lessee, was not at issue in *Hibbs.*

¶ 15 Finally, *ACF Indus., Inc. v. State of Arizona,* 714 F.2d 93 (9th Cir.1983), on which Taxpayers also rely, provides only scant support for their position in this appeal. The question in *ACF Industries* was whether Arizona's property taxing system assessed the plaintiffs' railroad cars at an assessment ratio that exceeded the "average assessment ratio" applicable to all "other commercial and industrial property in the assessment jurisdiction" and thereby violated 49 U.S.C. section 11503(b)(1)(1994). *Id.* at 94. The plaintiffs in *ACF Industries* contended that the relatively lower assessment ratio for leased residential property had to be factored into the average commercial assessment ratio because leased residential property was, in reality, "commercial and industrial" within the meaning of 49 U.S.C. section 11503(b)(1). The Ninth Circuit found that "[t]his contention fail[ed] because nothing in the statute prohibits Arizona from treating property devoted to residential use differently from property devoted to commercial and industrial use." *Id.* But the court had nothing else to say on this point, and its holding does not provide rea-

soned support for the proposition that leased property can never be considered commercial based on the use to which it is put by its owner.

¶ 16 However, a more cogent analysis of a similar situation has been made by the Iowa Supreme Court. In *Warden Plaza v. Bd. of Review*, 379 N.W.2d 362 (Iowa 1985), a limited partnership leased real property to a non-profit corporation for its use in operating a facility for housing elderly, low-income, and mentally retarded persons. Iowa Code section 427.1(9) exempted real property used by charitable organizations "solely for their appropriate objects" from property taxation. *Id.* at 363. Both the owner and the lessee applied to exempt the leased premises under this provision. *Id.* The court, however, held that a property owner's leasing for profit constitutes a "use" of the property, and accordingly that property so leased was not used solely for charitable purposes. *Id.* at 366. In reaching its decision, the court relied on *Appeal of Wirt*, 225 Kan. 517, 592 P.2d 875, 879–80 (1979), in which the Kansas Supreme Court had reasoned:

> [A]n investor who owns valuable property, real or personal, and leases it for profit ... is exercising his right to use the property just as surely as if he were utilizing it in a physical sense for his own objectives.... The renting by the lessor and the physical use by the lessee constitute simultaneous uses of the property and when an owner leases his property to another, the lessee cannot be said to be the only one using the property. The owner is using it as he sees fit to reap a profit from his investment just as surely as if he physically operated the property.

*Accord Sisters of Providence in Washington, Inc. v. Municipality of Anchorage*, 672 P.2d 446, 449–52 (Alaska 1983).

¶ 17 Thus, neither statute nor logic requires the conclusion that the tenant's use of the property must control its classification. Here, because Taxpayers' use of the property falls within the ambit of A.R.S. section 42–12001(12), while the tenant's use does not fall within any more specific classification, it is the Taxpayers' use that must control the property tax classification.

## ATTORNEY'S FEES

¶ 18 Taxpayers request an award of attorney's fees on appeal pursuant to A.R.S. section 12–348(B)(2000). Because Taxpayers are not the successful party on appeal, we deny the request.

## CONCLUSION

¶ 19 For the foregoing reasons, we affirm the tax court's judgment.

CONCURRING: MICHAEL D. RYAN, Judge, E.G. NOYES, Jr., Judge.