CATTANI, Judge:
¶1 This tax appeal involves approximately 2,000 acres of cattle grazing land in Pinal County (the "Property") owned by 100 Val Vista/Montgomery LLC, et al. (collectively, "Appellees"). The tax court entered judgment requiring Pinal County to classify the Property as agricultural for the 2014 tax year. The County appealed, challenging whether Appellees satisfied the statutory requirements for such classification, including that there be a reasonable expectation of operating profit from the agricultural use of the property. Ariz. Rev. Stat. ("A.R.S.") § 42-12152(A)(2). We hold that a taxpayer's submission of an affidavit as authorized by A.R.S. § 42-12152(C) conclusively establishes the reasonable expectation of operating profit requirement, and because Appellees filed the requisite affidavit, we affirm the tax court's ruling granting Appellees' motion for partial summary judgment as to that issue. We further affirm the tax court's rulings that Appellees satisfied the remaining requirements for agricultural land classification, including the court's findings after trial regarding the *9 Property's functional contribution to an overall ranching operation and the economic feasibility of the ranching operation.
FACTS AND PROCEDURAL BACKGROUND
¶2 During the relevant tax periods, Appellees leased the Property to cattle rancher Charles Bush and his company Rancho Asueno, a ranching operation composed of multiple noncontiguous parcels of land throughout Pinal County. As part of the lease, Appellees allowed Bush and Rancho Asueno to run cattle on the Property. Bush also oversaw the Property, including maintaining fencing, ensuring sufficient forage and water for livestock, moving cattle, and monitoring traffic on the land.
¶3 For the 2014 tax year, the county assessor classified the Property as vacant land, and the State Board of Equalization upheld the classification. Appellees appealed that determination to the tax court, and after a bench trial, the court reversed, ordering the County to classify the Property as agricultural.
DISCUSSION
¶4 Under A.R.S. §§ 42-12151 to -12152, as relevant here, to be classified as agricultural property for tax purposes, land used for grazing must meet four criteria. First, the grazing land must have a minimum carrying capacity of 40 animal units and contain an economically feasible number of animal units. A.R.S. § 42-12151(3). Second, the primary use of the property must be agricultural grazing and the property must have been in active production according to generally accepted range management practices for three out of the five previous years. A.R.S. § 42-12152(A)(1). Third, the property must have a reasonable expectation of operating profit from its agricultural use. A.R.S. § 42-12152(A)(2).[1] And fourth, property consisting of noncontiguous parcels must be managed and operated on a unitary basis, with each parcel making a functional contribution to the agricultural use of the property. A.R.S. § 42-12152(A)(3).
I. Reasonable Expectation of Operating Profit.
¶5 Before trial, the tax court granted Appellees' motion for partial summary judgment regarding the third requirement (reasonable expectation of operating profit) after Appellees filed an affidavit attesting that the Property was "actively producing with an expectation of profit." The County challenges that ruling. We review the grant of a motion for partial summary judgment de novo, see Cramer v. Starr , 240 Ariz. 4, 7, ¶ 8, 375 P.3d 69, 72 (2016), viewing the evidence in the light most favorable to the County, the non-moving party. See Rasor v. Nw. Hosp., LLC , 243 Ariz. 160, 163, ¶ 11, 403 P.3d 572, 575 (2017).
¶6 In 2012, the Legislature added subsection (C) to § 42-12152 to provide that the reasonable expectation of profit requirement "shall be satisfied if the owner files with the assessor an affidavit of agricultural use, signed by the owner attesting that all information in the affidavit is true and the property is actively producing with an expectation of profit." (Emphasis added); see 2012 Ariz. Sess. Laws, ch. 182, § 1 (50th Leg., 2d Reg. Sess.).[2]
¶7 Here, Appellees filed an affidavit of agricultural use that was signed by the owner, Larry Yount, attesting that the Property was actively producing with an expectation of profit. The County acknowledges that Appellees complied with the statutory criteria of § 42-12152(C) by filing the signed affidavit, but asserts that accepting such an affidavit at face value violates other rules of statutory construction, such as the absurdity *10 doctrine or in pari materia ; allows the tax court to consider evidence that fails to satisfy the requirements of Arizona Rule of Evidence 602 and Arizona Rule of Civil Procedure 56(e) ; impermissibly binds the judicial branch; and inequitably allows some landowners to gain an unfair tax advantage. But these arguments are unavailing in the face of clear and mandatory statutory language stating that the reasonable expectation of operating profit requirement "shall be satisfied" if the owner signs and submits the appropriate affidavit. See A.R.S. § 42-12152(A)(2), (C). Because Appellees filed the proper affidavit, and because the statutory language is clear, "we apply the plain meaning [of the statute] and our inquiry ends." Butler Law Firm, PLC v. Higgins , 243 Ariz. 456, 459, ¶ 7, 410 P.3d 1223, 1226 (2018) (quoting State v. Burbey , 243 Ariz. 145, 147, ¶ 7, 403 P.3d 145, 147 (2017) ).
¶8 Moreover, there is no inherent absurdity or inequity in the Legislature creating conditions for obtaining favorable tax treatment, while also dictating a method for complying with those conditions. The Legislature is tasked with determining the methods and procedures for taxation, see Ariz. Const. art. 9, § 11, and based on that authority, the Legislature could have chosen to completely remove the requirement that agricultural property have a reasonable expectation of profit or, as it did here, provide a simple mechanism for satisfying that criterion.
¶9 We note that other statutory provisions provide for recoupment and penalties from taxpayers who provide false information in an affidavit. See A.R.S. § 42-12157 ("If an owner of property or the owner's agent intentionally provides false information on an application form, ... [t]he property shall be reclassified immediately as being used for a nonagricultural use[,] ... [t]he owner is liable for the additional taxes[,] ... [and t]he owner shall also pay a penalty ...."). Thus, if the County is concerned that a taxpayer has filed a fraudulent affidavit, the County can take remedial action. But in classifying property for tax purposes, the County cannot ignore the directive of A.R.S. § 42-12152(C) that the affidavit satisfies the reasonable expectation of operating profit requirement.
¶10 The County further argues that Appellees' affidavit was incomplete because it did not list the Property's carrying capacity. But § 42-12152(C) does not require that the affidavit include information on carrying capacity. It only requires information regarding an expectation of operating profit, and here, the affidavit contained that information.
¶11 The County also asserts that the affidavit should not have been considered because it was created in 2015, which was after the valuation date (January 1, 2013) for the tax year at issue. The County relies primarily on State Tax Commission v. United Verde Extension Mining Co ., 39 Ariz. 136, 4 P.2d 395 (1931), and SMP II Limited Partnership v. Arizona Department of Revenue , 188 Ariz. 320, 935 P.2d 898 (App. 1996), for the proposition than any post-valuation-date evidence cannot be considered by the tax court. But neither of those cases supports the County's position.
¶12 In United Verde , the Arizona Supreme Court held that "the trial court is limited in determining the true value [of the property] to evidence which was in existence at the time the assessment was made." 39 Ariz. at 141, 4 P.2d 395. The court further noted, however, that the court was not limited to information actually known by the assessing body at the time of assessment but only to existing information that the assessing body could have used if it had knowledge of the information. Id. at 141-42, 4 P.2d 395. In SMP II , this court applied that principle to determine that the tax court erred by adopting a valuation that relied on post-valuation-date expense and income data. 188 Ariz. at 322, 324-25, 935 P.2d at 900, 902-03.
¶13 In the instant case, the affidavit was created in 2015 and thus was not in existence as of the January 1, 2013 valuation date. But the affidavit was based on information that existed on that date, namely, the Property owner's expectations at that time for the relevant tax year. Accordingly, the tax court properly considered it, see United Verde , 39 Ariz. at 141-42, 4 P.2d 395, and we therefore affirm the tax court's partial summary judgment ruling.
*11 II. Functional Contribution.
¶14 The County contends that the tax court improperly found that the Property functionally contributed to the agricultural use of an overall ranching operation, as required under A.R.S. § 42-12152. We review de novo issues of statutory interpretation, Premier Physicians Grp., PLLC v. Navarro , 240 Ariz. 193, 194, ¶ 6, 377 P.3d 988, 989 (2016), but defer to the tax court's factual findings if the record supports them. Eurofresh, Inc. v. Graham County , 218 Ariz. 382, 385, ¶ 14, 187 P.3d 530, 533 (App. 2007).
¶15 Under § 42-12152(A)(3), property consisting of noncontiguous parcels must be managed and operated on a unitary basis, with each parcel making a functional contribution to the agricultural use of the property. Both parties agree that Rancho Asueno is composed of noncontiguous parcels, including the Property, and that to obtain agricultural classification, the Property must make a functional contribution to the agricultural use of Rancho Asueno.
¶16 The statute does not define functional contribution, but the Department of Revenue has exercised its statutory authority to provide standard classification methods for agricultural property, see A.R.S. § 42-11054(A)(2), and we look to the Department's Agricultural Property Manual (2012) ("Manual") for definitions of the statutory terms at issue. See Cent. Citrus Co. v. Ariz. Dep't of Revenue , 157 Ariz. 562, 565, 760 P.2d 562, 565 (App. 1988). The Manual defines functional contribution as a "positive economic benefit derived from the agricultural use of an individual parcel of land that is incorporated into an agricultural operation." Manual at 1.8. A parcel can make a functional contribution to the agricultural use of the property through "common management, combined production, or by simply facilitating the movement of ... agricultural commodities from one parcel to another within the operation." Id.
¶17 The County contends that the Property does not make a functional contribution to the agricultural use of Rancho Asueno because Bush last ran Rancho Asueno's cattle on the Property in 2008, and from 2009 to 2012, only sublessees' cattle have grazed on the Property. Thus, the County argues that Rancho Asueno's agricultural use of the Property is speculative.
¶18 But Bush testified that subleasing the Property contributed to Rancho Asueno's overall ranching operation by ensuring that he could move the company's cattle there if rainfall and forage were scarce on other parcels. Furthermore, the test for functional contribution is not limited to use by the property owner; it focuses on whether the agricultural use of the land provides a positive economic benefit. See A.R.S. § 42-12152(A)(3) ; Manual at 1.8. And the testimony at trial was that sublessees grazed cattle on the Property and that Rancho Asueno benefitted from the subleases.
¶19 Relying on Krausz ex rel. KGC Trust I v. Maricopa County , 200 Ariz. 479, 28 P.3d 335 (App. 2001), the County further contends that subleasing is a commercial, rather than an agricultural, use of the property. In Krausz , the taxpayers leased their building to the government and challenged a subsequent classification of their property as commercial. Id. at 480, ¶¶ 1-3, 28 P.3d at 336. The court affirmed, reasoning that the owner's commercial use (leasing the building for profit) controlled classification precisely because the tenant's governmental use did not fall into any specific classification category. Id. at 481-83, ¶¶ 11, 17, 28 P.3d at 337-39. The court specifically distinguished, however, a case in which a tenant's agricultural use of leased property (which fell within the specifically defined "used for agricultural purposes" classification category) controlled over an owner's generalized commercial use. Id. at 482, ¶¶ 12-13, 28 P.3d at 338.
¶20 Because the use of the Property was agricultural, notwithstanding any subleases, and because the agricultural use provided economic benefit to Rancho Asueno, the tax court did not err by finding that Appellees satisfied the functional contribution requirement under § 42-12152(A)(3).[3]
*12 III. Carrying Capacity.
¶21 The County next argues that the tax court improperly calculated the Property's carrying capacity. We need not decide this issue, however, because of our conclusion that Appellees satisfied the requirements of functional contribution to Rancho Asueno's overall ranching operation under A.R.S. § 41-12152(A)(3). The County agrees that Rancho Asueno's overall carrying capacity was more than 40 animal units, which is the baseline requirement under A.R.S. § 42-12151(3), so the precise carrying capacity for the Property is not significant.
IV. Active Production and Generally Accepted Agricultural Practices.
¶22 The County asserts that the tax court erred by finding that the Property was in active production. We review the tax court's factual findings for clear error. Rigel Corp. v. State , 225 Ariz. 65, 67, ¶ 11, 234 P.3d 633, 635 (App. 2010).
¶23 Under A.R.S. § 42-12152(A)(1), agricultural property must have been in active production under generally accepted agricultural practices for three out of the five previous years. Active production is the "exhibition of physical preparation activities and ongoing labor practices which will yield an agricultural ... commodity." Manual at 1.3. Generally accepted agricultural practices are "[t]hose activities and practices that are used in an agricultural operation which are widely accepted and that can be supported by experts in particular agricultural disciplines." Manual at 1.8. Grazing land qualifies as being "in active production" even if it has been inactive due to: (1) an act of God (but this can only be claimed for one year) or (2) "reduced carrying capacity or generally accepted range management practices." A.R.S. § 42-12152(A)(1)(a), (d).
¶24 Here, given that the tax year at issue had a January 1, 2013 valuation date, the Property must have been in active production or permissibly inactive for three out of the five years from 2008 through 2012. And the evidence supported the tax court's finding that the Property met that requirement. Bush testified that he ran his own cattle on the Property in 2008 and that sublessees ran cattle on the Property in 2011 and 2012. And the County does not dispute that in 2009 and 2010 the Property was inactive due to drought, which both parties agree qualifies as an act of God under A.R.S. § 42-12152(A)(1)(a). See also Manual at 1.3-1.4. Thus, the Property was in active production (active cattle grazing) or permissibly inactive for the requisite amount of time.
¶25 Relatedly, the County argues that the tax court erred by allowing Bush to testify as to "generally accepted agricultural practices" under A.R.S. § 42-12152(A)(1) without being disclosed as an expert witness. But the statute does not require expert testimony, and the Manual contemplates but does not require the use of experts. See Manual at 1.8. Consequently, the tax court properly allowed Bush, who has extensive experience in ranching, to testify about widely accepted cattle grazing practices.
V. Economic Feasibility.
¶26 Finally, the County asserts that the tax court erred by finding that the Property contained an economically feasible number of animal units. See A.R.S. § 42-12151(3). We review this finding for clear error. See Rigel Corp. , 225 Ariz. at 67, ¶ 11, 234 P.3d at 635.
¶27 The County contends that the tax court improperly ignored its expert, who opined that the Property was not economically feasible for cattle grazing. But the tax court determines the weight to be accorded to expert testimony. Magna Inv. & Dev. Corp. v. Pima County , 128 Ariz. 291, 294, 625 P.2d 354, 357 (App. 1981). And because the County's expert had not visited the Property in several years and had considered the Property in isolation, rather than as a part of Rancho Asueno's larger ranching operation, *13 the tax court had an adequate reason to discount the expert's opinion.
¶28 Furthermore, Bush testified as to economic feasibility, stating that his goal was always to make money and that he generated income from Rancho Asueno and the Property. He also testified that the Property allowed Rancho Asueno to be sustainable in the long term because it diversified his grazing land. Thus, the record supports the tax court's finding as to economic feasibility.
CONCLUSION
¶29 For the foregoing reasons, we affirm. Appellees request attorney's fees on appeal under A.R.S. § 12-348(B). As Appellees have prevailed on appeal, we award them their costs and reasonable attorney's fees incurred on appeal upon compliance with ARCAP 21.

Reasonable expectation of operating profit under A.R.S. § 42-12152(A)(2) is a distinct statutory requirement from economic feasibility under A.R.S. § 42-12151(3), although the concepts are at times conflated. See Ariz. Dep't of Revenue, Agricultural Property Manual 2.2-2.3 (2012).

The Legislature modified this subsection prospectively in 2019 to provide that the reasonable expectation of operating profit requirement "is" rather than "shall be" satisfied by the affidavit. 2019 Ariz. Sess. Laws, ch. 49, § 1 (54th Leg., 1st Reg. Sess.). Because the prior version applies to this case, we do not address the effect, if any, of this statutory change.

The County also argues that the tax court's decision to classify subleasing as agricultural, and not commercial, activity conflicts with SWVP-GTIS MR, LLC v. Pinal County , No. 1 CA-TX 16-0017, 2018 WL 3853598 (Ariz. App. Aug. 14, 2018). But that memorandum decision does not have precedential value, see Ariz. R. Sup. Ct. 111(c)(1), and its holding-reversing the tax court's ruling precluding the property owner from presenting evidence at trial based on an alleged disclosure violation-does not address the question at issue here. SWVP , 2018 WL 3853598, at *4-5, ¶¶ 18-26.