NOT DESIGNATED FOR PUBLICATION

No. 121,018

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANSON BERNHARDT,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court, WILLIAM S. WOOLLEY, judge. Opinion filed June 12, 2020. Vacated and remanded with directions.

*Mark Sevart*, of Derby, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: Anson Bernhardt was convicted of first-degree murder for the 2012 death of his live-in girlfriend, Amber Kostner. The main defense presented at his trial was that he was too drunk to have formed the intent to kill Kostner when he repeatedly kicked her—mostly in the head and her upper body—and left her in a roadside ditch.

The case is before us now on Bernhardt's request for a new trial based on a claim that his court-appointed trial attorney didn't effectively represent him. The specific claims at issue in this appeal are (1) that the attorney should have requested a jury instruction to

better explain that even if Bernhardt had voluntarily gotten drunk, the jury could still consider that as a defense to intentional murder; (2) that the attorney should have called Bernhardt and his mother as witnesses; and (3) that the attorney should have called an expert witness to establish the extent of Bernhardt's intoxication.

Although we agree with the district court's decision to deny relief on the claims related to whether additional witnesses should have been called at trial, we conclude that further consideration of Bernhardt's jury-instruction claim is needed. We therefore vacate the district court's judgment and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The parties and the district court are familiar with the facts. The same district judge who presided over the jury trial at which Bernhardt was convicted in 2013 also presided over the 2018 proceedings on Bernhardt's effort to get a new trial. We will provide only a summary here of the key facts; a more detailed statement can be found in the Kansas Supreme Court's opinion affirming Bernhardt's conviction. *State v. Bernhardt*, 304 Kan. 460, 461-69, 372 P.3d 1161 (2016).

Bernhardt picked Kostner up from work on a Saturday afternoon. That evening, they went to a party; afterward, they went to a bar. The next morning, Kostner's body was in a ditch next to a roadway.

Kostner eventually admitted to police that he had kicked her perhaps 20 to 30 times in the head and upper body. He said she had been yelling at him and slapped him as he was driving the two home from the bar. Kostner said he then stopped, pulled her out of the car by the hair, and began kicking her.

2

After kicking her, he said he put her back in the car (first in the back seat and later in the trunk) before dumping her by the side of the road. He said that she was still breathing then and that he only learned she had died later from police. The medical examiner said that Kostner had suffered at least six distinct blows to the front of her head, causing her death; he also said that she might have survived had she received immediate medical attention.

The district court gave the jury the choice of first-degree murder (intentional and premeditated), intentional (but not premeditated) second-degree murder, reckless (not intentional) second-degree murder, and not guilty. The jury convicted Bernhardt of first-degree murder.

In Bernhardt's direct appeal, he claimed that the district court's jury instructions on premeditation were in error and that the court should have also given the jury the option to convict him of voluntary manslaughter (as used here, an intentional killing in the heat of passion after Kostner slapped him). The court rejected those claims, although two justices would have granted a new trial. Those justices concluded that a voluntary-manslaughter instruction should have been given, that the premeditation instructions were too confusing, and that taken together, the errors required a new trial. 304 Kan. at 483-89 (Luckert and Johnson, JJ., dissenting).

After a defendant has completed the direct appeal, he or she can bring further challenges in a habeas corpus proceeding. In Kansas, that starts with a motion filed under K.S.A. 60-1507. In a habeas action, the defendant can bring a claim that the defense attorney did an inadequate job at trial; that's the claim Bernhardt made in his habeas motion.

For some of the claims Bernhardt made about his attorney, the court decided that even as alleged by Bernhardt, the claimed error didn't merit a hearing. The court decided

that some other claims had enough merit that Bernhardt should be allowed to present evidence about them. After that evidentiary hearing, the court decided that none of the claims Bernhardt made justified setting aside the jury verdict and granting him a new trial.

Bernhardt then appealed to our court. On appeal, he doesn't pursue all the claims he initially made. In the next section, we will review each of the claims he is still making.

ANALYSIS

Although Bernhardt raised several claims in the motion and pretrial questionnaire filed on his habeas claim, only three remain at issue in this appeal. First, he claimed that the defense attorney should have called both Bernhardt and his mother, Cherie Lincoln, as witnesses at trial. Second, Bernhardt claimed that his trial attorney should have hired a toxicologist or other expert witness to explain how his drinking on the night Kostner was killed would have affected Bernhardt's ability to form the intent to murder her. Third, Bernhardt claimed that his attorney should have requested a jury instruction about voluntary intoxication as a defense.

The district court handled these claims in a different manner procedurally. At a pretrial conference, the court and attorneys decided what would be tried in both on-the-record and off-the-record discussions. After those discussions, the district court summarized the decision; we've added numbers to match the court's comments to the issues we mentioned in the preceding paragraph. The court said its decision was to "bring him in," referring to Bernhardt's trial counsel, to talk about "[1] any decision about [whether] to call the mother, any decision about the failure to call Bernhardt, [2] the involuntary PBT or voluntariness of the PBT, and any decisions about the psychologist and toxicologist."

4

The first issue was straightforward—the failure to call Bernhardt and his mother. The second issue related both to calling an expert witness and to some of the information that expert might be able to consider (potentially admissible alcohol-breath tests given to Bernhardt before he spoke to police that showed his level of intoxication). The district court did not mention the jury-instruction issue and did not suggest that evidence would be allowed about it. At the evidentiary hearing, no evidence was presented on that topic. The State's brief on appeal notes that the district court did not set the jury-instruction issue for evidentiary hearing, and that's our reading of the record too.

Because of that, a different standard of review applies in this appeal to the jury-instruction issue. The district court may summarily deny an inmate's habeas motion without holding an evidentiary hearing when the court's file conclusively shows that the prisoner is entitled to no relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). When that happens, we independently review the motion and case file to determine whether they do, in fact, conclusively show that prisoner isn't entitled to relief. 300 Kan. at 881. So that's the standard we must apply to the jury-instruction issue.

On the other issues, for which the district court let each party present the evidence each thought relevant, we review the district court's factual findings to be sure that they are supported by substantial evidence. If they are, we must accept them. We then review the legal issue independently, with no required deference to the district court. *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014).

The legal issue here is whether the work of Bernhardt's trial counsel, Steve Osburn, was constitutionally inadequate. To obtain habeas relief, Bernhardt had the burden to show two things set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) that his attorney's work was below minimum standards and therefore was constitutionally deficient; and (2) that his attorney's substandard work prejudiced his defense. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d

5

311 (2013); *Mattox v. State*, 293 Kan. 723, 725-26, 267 P.3d 746 (2011). We often refer to these two parts of the *Strickland* test as the "performance prong" and the "prejudice prong." *Mattox*, 293 Kan. at 726. The benchmark for judging Bernhardt's claim was whether his attorney's conduct "'"so undermined the proper functioning of the adversarial process"'" that the district court could not rely on his trial "'"having produced a just result."'" *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012).

We should add that our review of the attorney's work is deferential—we must not view the attorney's performance through the corrective lens of hindsight. *Rowland v. State*, 289 Kan. 1076, 1086, 219 P.3d 1212 (2009). Instead, we presume that the attorney's performance fell within the wide range of reasonable professional assistance and consider the entire range of possible reasons why the attorney might have made the decisions that he or she did. See *Cullen v. Pinholster*, 563 U.S. 170, 196, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011); *Flynn v. State*, 281 Kan. 1154, 1157, 136 P.3d 909 (2006). Our test is not what the best or even a good attorney would have done but whether some reasonable attorney could have acted, under the circumstances, as the defense attorney acted at trial. *Hardwick v. Benton*, 318 Fed. Appx. 844, 846 (11th Cir. 2009) (unpublished opinion).

With these standards in mind, we turn our attention to the specific issues presented on appeal.

*The Claim that Counsel Should Have Called Barnhardt and His Mother as Witnesses*

Both Bernhardt and Lincoln testified at the habeas hearing. Bernhardt said that he would have testified had he been called. Bernhardt said that he had discussed with Osburn how drunk Bernhardt had been that night. He also said that he had discussed with Osburn whether he should testify but that he didn't recall much about those conversations. Even so, he agreed that it had been his decision not to testify.

6

Lincoln said she had briefly spoken with Osburn about the possibility of testifying at her son's trial, but she recalled little about that discussion. She said she would have told Osburn that Bernhardt and Kostner often came home "very drunk" from a bar. They lived in Lincoln's home, and she said she would often have to ask them "to quiet down." She said this happened "every single night" during the month and a half they lived in her home.

Osburn said he made a "tactical decision" not to call Lincoln as a witness:

> "I just didn't think her advising [the jury] that they [Bernhardt and Kostner] had a history of violence with each other nightly was going to help anything. . . . We were trying to argue that he didn't mean to do this, that he didn't have the intent to do this. And, you know, to put on some type of evidence that when he gets drunk he gets violent and that he gets drunk every night seemed to be counterproductive to where we were trying to go."

As for Bernhardt, Osburn said that he told Bernhardt "he didn't need to testify" because Osburn could use the statements Bernhardt made to police to argue on his behalf. Osburn said Bernhardt made the decision not to testify.

The district court found that the decision not to call Lincoln "did not fall below an objective standard of reasonableness." The court said that there was adequate information in the record about Bernhardt's alcohol consumption "without additional testimony [from Lincoln] that could have actually harmed Mr. Bernhardt and not necessarily helped in his favor."

The court found that Barnhardt made the decision not to testify after he had discussed it with his attorney. The court found that "Osbourn's advice and then Mr. Bernhardt's decision not to testify . . . did not fall below an objective standard of

reasonableness." The court also concluded that Bernhardt had not shown, "with regard to his mother's testimony and with regard to [his own] decision not to testify, . . . that there's a reasonable probability that the outcome of the proceeding would have been more favorable in favor of the defendant."

We see no basis to disagree with the district court's conclusions on these points:

- Osburn said it was a tactical decision not to call Lincoln, and that seems to have been a reasonable decision. As Osburn said, presenting the jury a picture in which Bernhardt got drunk and loud and disagreeable with Kostner every night wouldn't really have helped negate the idea that he intended to harm her on the night she died.

- Bernhardt agreed that he made the decision not to testify, and Osburn's recommendation seems to have been a reasonable one. Bernhardt would no doubt have been asked about the history of drunken disagreements between him and Kostner, and Bernhardt hasn't presented a coherent argument for how that might have been helpful to him. Meanwhile, substantial information about Bernhardt's intoxication on that night came into evidence through his statements to police.

- Based on their brief testimony at the evidentiary hearing on Bernhardt's habeas motion (covering less than 30 transcript pages for both witnesses), limited additional information would have come into evidence from Bernhardt and Lincoln. The trial judge who had presided over the jury trial found that Bernhardt hadn't shown a reasonable probability that the jury verdict would have been different had this testimony been given at trial. We agree with that assessment.

*The Claim that Counsel Should Have Presented an Expert Witness*

Bernhardt's next claim is that Osburn should have hired an expert witness who could have told the jury how Bernhardt's intoxication affected him that night. Ideally, the

8

expert would have told the jury that Bernhardt's intoxication level made it all but impossible for him to have formed the intent to kill Kostner.

There is some appeal to this argument. Everyone recognizes that there was evidence that Bernhardt and Kostner had been drinking over a period of several hours that night. As Osburn testified at the habeas hearing, the defense was that Osburn "didn't have the intent to do this," "that he was too intoxicated, he did not have the requisite intent necessary to commit first degree murder." Even so, Osburn said that he didn't recall considering having an expert witness talk to the jury about Bernhardt's intoxication level.

The district court suggested at the hearing some problems that would have accompanied this defense. If the expert relied on an interview with Bernhardt to learn facts about what he had drunk that night, that could have forced Bernhardt to testify in order to get the expert's testimony admitted. If the expert didn't rely on any new interviews with Bernhardt, the expert would presumably try to rely on the alcohol-breath tests given to Bernhardt that night—but no hearing had ever been held about their admissibility. Nor were they presented at the habeas hearing.

But the district court pointed in its ruling to an even bigger problem: Bernhardt didn't present any expert testimony at the habeas hearing, and Bernhardt had the burden under *Strickland* to show both ineffective representation *and* prejudice. Even if Osburn should have tried to find a toxicologist (something the district court said was "debatable"), the court found that Bernhardt hadn't shown prejudice "because I don't have any evidence in which to make that determination."

Once again, we agree with the district court's conclusion. Perhaps expert testimony helpful to Bernhardt could have been obtained; some investigation in that regard likely would have been reasonable. But even now, we have no information to suggest what a toxicologist could have said about Bernhardt's ability to form coherent thoughts—like

9

intent to harm someone—given his level of intoxication that night. That leaves Bernhardt with no evidence to support a claim under the prejudice prong of the *Strickland* test.

*The Claim that Counsel Should Have Requested a Voluntary-Intoxication Instruction*

Bernhardt's final claim is that Osburn should have requested a jury instruction on voluntary intoxication as a defense. Evidence at trial showed that Bernhardt had been drinking that night over a period of several hours. He did so voluntarily, and he tries to invoke his voluntary intoxication as a defense. First-degree murder requires a specific intent—premeditation—and voluntary intoxication may negate the intent element of specific-intent crimes. *State v. Seba*, 305 Kan. 185, 211, 380 P.3d 209 (2016).

There's a pattern jury instruction that can be given to explain this, but Osburn didn't ask for it at his trial. Had that instruction been given, the jury would have been told:

> "Evidence of voluntary intoxication may be considered in determining whether such intoxication impaired the defendant's mental faculties to the extent that he was incapable of forming the necessary intent to commit intentional murder with premeditation." See PIK Crim 4th 52.060 (2018 Supp.); *State v. Pabst*, 273 Kan. 658, 666, 44 P.3d 1230 (2002).

As we have already noted, Osburn testified at the habeas hearing that the basis of the defense was that Bernhardt was too intoxicated to form the necessary intent for a premeditated murder. So it would seem that Osburn should have requested this instruction.

We hesitate to make that call, though, because Osburn wasn't asked at the habeas hearing why he didn't request the instruction. Could there have been some tactical reason for that? We are supposed to be deferential to tactical decisions of trial counsel.

*Rowland*, 289 Kan. at 1086. But the district court summarily dismissed this jury-instruction claim, so Osburn wasn't asked about it at the evidentiary hearing.

Even if we assume that Osburn should have requested this instruction, though, two more questions would need to be answered affirmatively before Bernhardt would have a right to habeas relief. First, the instruction would have had to have been factually appropriate. That can be a difficult hurdle because Osburn would have to show not only that he had drunk quite a bit but also that his intoxication had impaired his ability to form the ability to have the required specific intent. See *State v. Morris*, No. 119,911, 2020 WL 2504589, at *5-6 (Kan. 2020); *State v. Craig*, 311 Kan. 457, Syl. ¶ 2, 462 P.3d 173 (2020); *State v. Becker*, 311 Kan. 176, Syl. ¶ 6, 459 P.3d 173 (2020). Second, we would have to find that the failure to request this instruction prejudiced the defense. *Adams*, 297 Kan. at 669.

Here, we believe those questions should first be addressed by the district court. We note that while our record includes the trial transcript, we do not have the trial exhibits. That includes the videotaped interview police did with Bernhardt, which apparently was the key evidence in support of the voluntary-intoxication defense.

The district court apparently determined that an evidentiary hearing wasn't warranted for the jury-instruction claim during an off-the-record part of the habeas pretrial conference. We therefore do not have the benefit of the district court's reasoning. Normally, though, the district court in a habeas case provides factual findings and legal conclusions to explain its ruling. See Supreme Court Rule 183(j) (2020 Kan. S. Ct. R. 223).

Sometimes, an appellate court will still be able to decide the issue, even without those findings, when the appellate record is complete and findings don't interfere with the ability to adequately review the case. See *Breedlove v. State*, 310 Kan. 56, 60, 445 P.3d

1101 (2019). Here, though, given the need to hear whether Osburn had some tactical reason for not requesting the instruction, a key gap in our record, and the lack of findings, we conclude that it is best to send this issue back to the district court for further consideration.

We vacate the district court's judgment and remand for further proceedings on the defendant's claim that he received inadequate representation because his attorney did not request a jury instruction on voluntary intoxication.